UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LAURA POWERS, CHRISTINA ROSEAN,
Individually and on Behalf of Those Similarly
Situated,

                                Plaintiffs,

      v.

HEALTH FIRST, INC.,

                                Defendant.

No. 6:23-cv-00375-JSS-RMN

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

Plaintiffs reply to Health First Inc.'s Memorandum in Opposition to Plaintiffs' Motion for Class Certification (Docs. 168 (sealed), 171 (redacted)) ("Class Oppos.") and respectfully submit the proposed Classes should be certified.

## I.    Both Plaintiffs Have Class Standing

The attack on the standing of Plaintiffs Rosean and Powers widely misses the mark. Health First demands *now* "evidence" that both have suffered "actual price injury." This error ignores both stubborn class and standing precedent.

*First*, a purported class representative need not now quantify with "evidence" her merits "actual price injury" to have class standing. To demonstrate Article III individual standing Ms. Rosean and Ms. Powers must *allege* a personal, actual injury, a causal connection between it and Health First's anticompetitive conduct, with the

injury likely to be redressed by a favorable resolution of this matter. *Harrell v. Fla. Bar*,

608 F.3d 1241, 1253 (11th Cir. 2010). Prior to the consideration of summary judgment,

these *individual standing elements are not particularly onerous, and will be satisfied by "general*

*factual **allegations** of injury resulting from the defendant's conduct." Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 561 (1992) (emphasis supplied); *John v. Whole Foods Mkt. Grp.,*

*Inc.,* 858 F.3d 732, 736 (2d Cir. 2017); *Andreas–Moses v. Hartford Fire Ins. Co.*, 326

F.R.D. 309, 314 (M.D. Fla. 2018). Plaintiffs manifestly meet this standard. Class

Motion ("Class Mot.") (Doc. 151) at 5-9. Health First ignores this controlling

precedent.

    *Second*, it also ignores that --- at this class juncture -- Dr. Gale must only

demonstrate the *capacity* of his regression benchmarking to show at trial the classwide

actual price injury of Plaintiffs and other patients in the damage Class. Class Mot. at

23. Plaintiffs and Dr. Gale are not required now to provide a merits benchmark expert

report "evidencing" Plaintiffs' "actual price injury." Further, they are not required to

show actual damages at this class stage. Class Mot. at 24.

    *Third*, Dr. Gale will include in his modelling at trial both inpatient and

emergency room billings from Health First's Viera Hospital, where Ms. Rosean's son

received emergency care. Class Reply Report of Dr. John Gale ("Gale Reply Rep.")

at 29.

    *Fourth*, as to Dr. Gale's inability, due to the present unavailability of

disaggregated emergency room CPT data, to test this benchmarking as to this care, he

provides reliable opinion there should be no difficulty benchmarking this overcharging

of the much smaller component of Class billings before trial when the data is available. Plaintiffs' Response to *Daubert* Motion to Exclude Dr. Gale's Opinion ("*Daubert* Resp") at 11-12.

*Fifth*, establishing Ms. Powers' standing, her plan administrator informed her in 2021 before the original complaint was filed in 2023 that she had a $1,198.80 co-insurance obligation. Under oath she has testified she believes that this is a binding obligation and it is undisputed that she has proceeded to meet it with multiple installment payments. Class Motion at 7 & Ex. D at Powers 000085.

## II.   Plaintiffs Seek to Certify the First Amended Complaint's Damage Class As Expressly Alleged

As to Health First's claim that Plaintiffs and Dr. Gale are seeking certification of the wrong damage class, it myopically and erroneously ignores the First Amended Class Action Complaint ("FAC") (Doc. 56). "Covered Class care" is all care by Health First hospital inpatient place of service location code 21 (Health First inpatient facilities) "including *in part* care provided there under the DRG codes listed in Exhibit B hereto" and Health First hospital emergency place of service location code 23 (Health First emergency room facilities) "including *in par*t care provided by CPT codes listed in Exhibit C." FAC ¶ 143.The Class thus seeks relief for its members' direct payments to Health First for *all* the relevant care on or after March 1, 2019. FAC ¶¶ 138, 140.

Further, as the FAC makes clear, the codes in the Exhibits are ***"being augmented as a result of … ongoing discovery into Health First billing and coding, and by expert***

*analysis*" FAC ¶144. (emphasis supplied). Class care is *not* limited to the DRG and CPT codes listed in Exhibits B and C. The codes are provided to illustrate how all class care can be "*ascertained*" by place of service. FAC ¶ 143.

In testing the capacity of his benchmarking at trial as a result of discovery and his expert analysis Dr. Gale is modelling the correct Class alleged. He provides extensive fact and opinion analysis supporting this FAC allegation that all inpatient and emergency room care is covered Class care. *Daubert* Resp.at 9-10.

## III.   Patients in the Damage Class by Virtue of Their Co-Insurance Payments Can Be Reliably Ascertained by Dr. Gale

Contrary to Health First contention, Dr. Gale fully and carefully opines by analysis of Health First transaction data how those patients who have reached their maximum co-insurance payments can be excluded from the damage Class. *Daubert* Resp.at 11. Health First will have a full and fair opportunity at trial and on the merits to challenge how this exclusion has been accomplished.

## IV.   Class Patients Can Represent Their Plans Because They Suffer The *Same Direct, Shared* Antitrust Price Injury as to the *Same* Procedures

Health First vaguely claims there are "potential conflicts" between patients and their plans in the damage Class preventing patients from representing the plans without bothering to specify any conflicts – let alone "fundamental" conflicts -- between the patients and the plans required to prevent typicality and adequacy of representation.

### A.   There Are No Conflicts Between a Patient and Her Plan Suffering the Same Direct and Coterminous Antitrust Price Injury on the Same Procedure

The class typicality prerequisite "focuses on the *similarity* between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) (citation and quotation omitted) (emphasis supplied). It assesses whether a "sufficient nexus exists between the claims of the named representatives and those of the class at-large." *Andreas–Moses v. Hartford Fire Ins. Co.*, 326 F.R.D. 309, 315 (M.D. Fla. 2018).

Any "conflict must be a *fundamental one* going to the *specific* issues in controversy." *Disposable Contact Lens Antitrust Litigation*, 329 F.R.D. 326, 408-409 (M.D. Fla. 2018) (emphasis supplied). There is a fundamental conflict where class members claim to have been harmed by the same conduct that benefited other members of the class, and the economic interests and objectives of the proposed representatives differ significantly from the economic interests and objectives of unnamed class members. *Id*. If a named plaintiff has "vigorously represented" the class and is "capable of continuing to do so," it is adequate. *Id*. at 409.

The adequacy of representation prerequisite requires that the representative parties will fairly and adequately protect the interests of the class. "A plaintiff can meet this requirement by showing that the class representative has common interests with the class members and by demonstrating that the class representative will vigorously prosecute the interests of the class through qualified counsel." *Id.* at 408 (citation omitted).

**B.      The Direct Antitrust Price Injury Inflicted by Health First's Monopoly Billing on Each Procedure Is Coterminous and *Shared* by the Class Patients and Their Plans**

5

"[M]onopoly overcharging is shared by the patient (through co-insurance payments) and the associated payments of the patient's plan. The patient pays the co-insurance for a billing (typically 20% of the Health First monopoly billing) and the patient's plan pays the remainder (typically 80%). By way of example, assume a patient has a covered procedure billed at $1,000. If the patient has a 20% co-insurance requirement in her or his plan, the plan would pay $800 of the monopoly price and the patient $200. Assuming that $300 represents the amount the billing exceeds the estimated competitive price for the procedure (a 30% monopoly overcharge), the patient and her or his plan share this same $300 overcharge. With a 20% co-insurance payment, the patient has antitrust price injury and damages of $60 and the plan $240."

Class Motion at 12. Under typicality analysis there is no "fundamental conflict" where the class patients have the same direct antitrust price injury shared by their plans and where by the same Health First conduct did *not* benefit the plans in the damage class. Under adequacy of representation analysis, each patient and its plan "has common interests" to achieve remedy for the direct and shared antitrust price injury.

### C. There Is No Conflict as to the Division of The Shared Antitrust Price Injury

There is no conflict as to the division of the overall direct, shared billing for each procedure (*e.g.*, the 20%/80% above). This division is set out as a matter of contract in each patient's plan. The *same* benchmark average antitrust price analysis is applied here by Dr. Gale as to both the *actual* patient co-insurance paid and the associated *actual* plan payment. Benchmark damages will be awarded to a patient and her plan according to the cumulative *actual payments* paid by a patient and her plan during the class damage period. There is no conflict as to how benchmarking will work here across the patient and the plan.

**D.**    *All* **Efficient Enforcers of the Antitrust Laws for Shared Class Antitrust Price Injury -- Big or Small -- Have Standing**

Health First's argument relies implicitly on the superficial small versus large optic and has nothing to do with the *specific* and *fundamental* conflict analysis under the typicality and adequacy prerequisites.

The antitrust laws manifestly do not limit standing only to the largest efficient enforcers of the antitrust laws so as to prevent smaller enforcers -- suffering the same direct overcharge injury here for each procedure -- from representing in the same class both sorts of entities suffering the same coterminous injury. This would be contrary to the purpose of the Sherman Act, which "is to protect the public from the failure of the market." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993). Consistent with that goal, the Supreme Court has counseled that "[l]egal presumptions that rest on formalistic distinctions" – like here the size of class members' claims – do not reflect the "actual market realities … generally disfavored in antitrust law." *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 466–67 (1992). The "actual market realities" here compel the conclusion that the patient class representatives have antitrust standing as direct purchasers for the entire class. As direct purchasers in the relevant market, they are "presumptively proper plaintiff[s] to allege antitrust injury." *BookLocker.com, Inc. v. Amazon.com, Inc.*, 650 F. Supp. 2d 89, 105 (D. Me. 2009).

**E.**    **Under Class Superiority Analysis a Class Encompassing Both Smaller and Larger Purchasers Should Proceed**

The superiority requirement of Rule 23(b)(3) requires a plaintiff to show that a class action would be superior to other available methods for fairly and *efficiently*

7

adjudicating the controversy. The three relevant factors from Rule 23(b)(3)(A)–(D) superiority analysis point to allowing representation of smaller and larger purchasers to proceed here.

Under the first superiority test, for the reasons that common issues predominate over non-common issues, a plan's interest in individual control does not counsel against certification. No plan has filed and indicated an interest in individually controlling its claims even though the damage period here began five years ago in March 1, 2019.

Further, under the third superiority test it is desirable to concentrate the litigation for both smaller and larger class members in this federal forum. Finally, under the fourth superiority test, also because of significant, predominate common issues, there is no difficulty in managing this well-defined and ascertainable damage class representing both sorts of direct purchasers.

**F.      Under the Undisputed Facts The Plaintiffs Are Strongly and Manifestly Motivated to Achieve Plan Remedy As Well**

Extensive, fact-based evidence demonstrates Plaintiffs are strongly motivated under typicality and adequacy of representation analysis to achieve plan remedy as well without conflict. Class Motion at 15-17.

**G.      All Health First's Exclusionary Conduct – Including the Adventist Market Division – Contributes to Classwide Antitrust Price Injury**

Contrary to Health First contention in its *Daubert* Motion **at ---**, with careful and extensive, reliable economic support Dr. Gale opines that all Health First's exclusionary conduct alleged, including the Adventist market division, in the

8

aggregate contribute to its market power and its above-competitive pricing inflicted on the damage Class. Now or on the merits it is not necessary to disaggregate injury and damages attributable to each conduct in aid of monopolization. *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1161 (7th Cir. 1983) ("Not requiring strict disaggregation of damages among the various unlawful acts of the defendant serves to prevent a defendant from profiting from his own wrongdoing and makes sense when damages arise from a series of unlawful acts intertwined with one another."); *LePage's Inc. v. 3M*, 324 F.3d 141, 166 (3d Cir. 2003) ("[I]t would be extremely difficult, if not impossible, to segregate and attribute a fixed amount of damages to any one act as the theory was not that any one act in itself was unlawful, but that all the acts taken together showed ... [an antitrust] violation.").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully contend that the Classes should be certified pursuant to Fed. R. Civ. P. 23(b)(3) and 23(b)(2) and the two proposed law firms be appointed as Class counsel.

Dated: August 22, 2025                              Respectfully submitted,

BY: */s/  R. Stephen Berry*
Trial Counsel
R. Stephen Berry
*(Admitted Pro Hac Vice)*
**Berry Law PLLC**
1100 Connecticut Avenue NW
Washington, DC 20036
Telephone: (202) 296-1212
sberry@berrylawpllc.com

Trial Counsel
Tucker H. Byrd
Florida Bar No. 381632
**Byrd Campbell, P.A.**
180 Park Avenue North, Ste 2A
Winter Park, FL 32789
Telephone: (407) 392-2285
TByrd@ByrdCampbell.com

Ronald G. Meyer
**Meyer, Blohm and Powell, P.A.**
Post Office Box 1547
Tallahassee, FL  32302
rmeyer@meyerblohmlaw.com
Telephone: (850) 878-5212

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2025 I have caused the foregoing to be served via the ECF system on counsel for the Defendant.

*/s/ R. Stephen Berry*

R. Stephen Berry