UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LAURA POWERS and
CHRISTINA ROSEAN,

     Plaintiffs,

v.                                                     Case No: 6:23-cv-375-JSS-RMN

HEALTH FIRST, INC.,

     Defendant.
_____/

## ORDER

This case stems from Plaintiffs' claims that Defendant, a Brevard County, Florida hospital corporation, monopolized the acute care hospital market and allegedly violated antitrust laws. (Dkt. 56.) Plaintiffs move for class certification. (Dkts. 151, 174.) Defendant opposes the motion. (Dkts. 168, 171, 189, 192.) For the reasons below, the motion is denied.

## BACKGROUND

Plaintiffs bring this proposed consumer class action on behalf of themselves and those similarly situated against Defendant for alleged antitrust violations. (Dkt. 56.) Defendant is the parent corporation of four hospitals in Brevard County: Holmes Regional Medical Center, Cape Canaveral Hospital Inc., Palm Bay Hospital, and Viera Hospital, Inc. (*Id.* at 6.) Plaintiff Laura Powers's husband received inpatient care from Defendant's Cape Canaveral Hospital and Holmes Regional Hospital in

2020 and 2021.  (*Id.* at 5–6; Dkt. 151 at 6–7; Dkt. 235 at 2.)  Additionally, Powers's

son received emergency room care at Cape Canaveral Hospital in 2020, 2021, and

2022.  (Dkt. 56 at 6; Dkt. 151 at 7–8; Dkt. 235 at 2.)  Plaintiff Christina Rosean's son

received emergency room care in Defendant's Viera hospital in 2022.  (Dkt. 56 at 6;

Dkt. 151 at 5–6.)

Due to various purported exclusionary practices, barriers to entry, and its ability

to raise prices above competitive levels, Plaintiffs allege Defendant possesses

monopoly power in the relevant market and bring claims for violations of the Sherman

Antitrust Act, 15 U.S.C. §§ 1–2, and the Florida Antitrust Act, Fla. Stat. § 542.19.

(Dkt. 56 at 4, 6, 47–54; Dkt. 151 at 2–3.)  Pursuant to Federal Rules of Civil Procedure

23(a), 23(b)(2), and 23(b)(3), Plaintiffs move to certify the following class:

> Plaintiffs represent a [c]lass of (a) persons insured by health plans and (b)
> their health plans which purchase inpatient and emergency room hospital
> care from [Defendant's] acute care hospitals on behalf of the persons, or
> members of the persons' families covered by their health plans.  Covered
> [c]lass care is ascertained and identified by (a) [Defendant's] hospital
> inpatient place of service location code 21 ([Defendant's] inpatient
> facilities) and Diagnostic Related Group ("DRG") codes which
> [Defendant] is required to maintain and use for claim processing by
> federal and state mandate; and (b) [Defendant's] hospital emergency
> place of service location code 23 ([Defendant's] emergency room
> facilities) and Current Procedural Terminology ("CPT") codes, codes
> which [Defendant] is required to maintain and use for claim processing
> by federal and state mandate.

> The [c]lass seeks relief for its members' direct payments to [Defendant]
> for this relevant care on or after March 1, 2019.  For [c]lass persons, such
> payments are defined as their co-insurance payments, all or in part,
> computed as percentages of [Defendant's] pricing, and not limited by
> health plan annual, out-of-pocket maximums or otherwise. Their [c]lass
> plans' payments are defined as all plan payments, all or in part, to
> [Defendant] for covered care.

(Dkt. 151 at 1–2 (quotation omitted).)  Plaintiffs also rely upon Dr. John Gale to demonstrate that "class[-]wide antitrust price injury and damages" can be established "using   predominate commonly observable proof."   (Dkt. 152-4 at 6 (quotation omitted).)  Gale asserts that Defendant's "billing and payment data can identify [c]lass members," specifically that the "claim and remittance data allows for separating [c]lass and non-[c]lass members."  (*Id.* at 58.)  Specifically, Gale explains that the class includes "patients who paid their full co-insurance payment" and that "accounts where the payor did not make a payment, and the patient did not pay a co-insurance amount are not included in the class."  (*Id.* at 59 (cleaned up).)  Similarly, "accounts related to Medicare and Medicaid and other non-commercial payors" are not included in the class.  (*Id.*)

The court issued an order to show cause as to the necessity of an evidentiary hearing after concluding that a disputed factual question exists concerning whether Plaintiff Powers has standing based on her husband's inpatient care.  (Dkt. 232.)  In response, Plaintiff Powers pointed to additional alleged co-insurance payments of Plaintiff Powers.  (Dkt. 235.)  Defendant responded that these new payments were similarly insufficient to confer standing.  (Dkt. 246.)  Given the factual conflicts, the court held an evidentiary hearing on March 23, 2026.[1]  (Dkt. 274.)  At the hearing,

---

[1] *See Bischoff v. Osceola County*, 222 F.3d 874, 879 (11th Cir. 2000) ("[A] district court cannot decide disputed factual questions or make findings of credibility essential to the question of standing on the paper record alone but *must* hold an evidentiary hearing." (emphasis omitted)); *United States v. Henry*, 621 F. App'x 968, 972–73 (11th Cir. 2015) (noting that a district court improperly weighed evidence and determined the truth of the matter without an evidentiary hearing,  and explaining that even where a district court does not make a credibility determination, "a district court should resolve disputed

- 3 -

Plaintiff Powers pointed to four potential bases for standing: two emergency room visits and two inpatient treatments. (Dkt. 275.)

| Plaintiff Laura Powers Alleged Co-Insurance Payments | | |
|---|---|---|
| Inpatient or Emergency Room | Date | Amount of Co-Insurance |
| Emergency Room | 9/16/2020 | $356.93 |
| Inpatient | 2/15/2020–2/23/2020 | $1819.45 |
| Emergency Room | 10/29/2020 | $22.68 |
| Inpatient | 7/2/2021–7/7/2021 | $1,198.80 |

As explained herein, the court denies Plaintiffs' motion for class certification because Plaintiff Powers lacks standing as to inpatient care. Additionally, Plaintiffs fail to satisfy the typicality and adequacy prongs of the Rule 23(a) analysis, the Rule 23(b)(2) analysis, and the predominance and superiority and manageability prongs of the Rule 23(b)(3) analysis.

## APPLICABLE STANDARDS

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). The burden of establishing the propriety of class certification "rests with the advocate

---

factual issues either at a pretrial evidentiary hearing or at trial" (quotation omitted)); *Am. C.L. Union of Fla., Inc. v. Dixie Cnty.*, 690 F.3d 1244, 1249 (11th Cir. 2012) (explaining that an issue of credibility may exist where testimony is inconsistent).

of the class." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003). "[I]f doubts remain about whether the standard is satisfied, the party with the burden of proof loses." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016) (quotation omitted). "All else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation." *Id.* A "district court has broad discretion in determining whether to certify a class." *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992); *accord Griffin v. Carlin*, 755 F.2d 1516, 1531 (11th Cir. 1985) ("Questions concerning class certification are left to the sound discretion of the district court.").

Federal Rule of Civil Procedure 23(a) requires the movant to demonstrate the following when moving for class certification:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites are commonly called the "numerosity, commonality, typicality, and adequacy of representation" requirements. *See Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1260 (11th Cir. 2023). After meeting the requirements of Rule 23(a), the party seeking class certification must establish at least one of the alternative requirements of Rule 23(b). *Valley Drug*, 350 F.3d at 1188.

A Rule 23(b)(2) class is permitted when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). A Rule 23(b)(3) class is permitted if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Also, the class representative must have standing to sue, and the proposed class must be adequately defined and clearly ascertainable. *See Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) ("[P]rior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim."); *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) ("[A] plaintiff seeking to represent a proposed class must establish that the proposed class is adequately defined and clearly ascertainable." (quotation omitted)).

## ANALYSIS

### A. Standing

A prerequisite to class certification is that "the proposed class representatives have standing to pursue the claims as to which class[ ]wide relief is sought." *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1287 (11th Cir. 2001). "Federal

courts are courts of limited jurisdiction." *Gardner v. Mutz*, 962 F.3d 1329, 1336 (11th Cir. 2020) (quotation omitted). Article III of the Constitution limits federal courts' jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. To satisfy "the case-or-controversy requirement of Article III," Plaintiffs must prove that they have standing to pursue each of the claims asserted in the complaint. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Proving standing requires Plaintiffs to establish that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Further, "[t]o have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but . . . also be part of the class and possess the same interest and suffer the same injury as the class members." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (quotation omitted). Therefore, the court must determine that at least one named class representative has Article III standing to raise each class claim or subclaim. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1261 (11th Cir. 2021) ("[O]nly one named plaintiff must have standing as to any particular claim in order for it to advance."). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

Defendant only disputes the first prong, whether Plaintiffs suffered an injury in fact. (*See* Dkt. 168 at 8–12.) "The proof required for a plaintiff to establish standing varies depending on the stage of litigation." *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 891 (11th Cir. 2023); *see Lujan*, 504 U.S. at 561 ("Since [the standing elements]

are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."). "The movant's burden of proof at the class-certification stage is unclear." *Williams*, 65 F.4th at 1254. The Eleventh Circuit has repeatedly "assume[d] without deciding that the applicable standard is a pleading standard." *Id.*; *see Smith v. Miorelli*, 93 F.4th 1206, 1212 n.7 (11th Cir. 2024) (assuming the same); *see also Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . . ."); *DiPierro v. Fla. Health Scis. Ctr., Inc.*, 737 F. Supp. 3d 1314, 1321 (M.D. Fla. 2024) (applying a pleading standard for the purposes of the standing analysis on a motion for preliminary certification of a class).[2] That said, "[w]here . . . the facts developed in discovery firmly contradict the allegation in the complaint, the [d]istrict [c]ourt cannot rely on the complaint's factual allegation." *Green-Cooper*, 73 F.4th at 891; *see Marrow v. E.R. Carpenter Co.*, No. 8:23-CV-02959-KKM-LSG, 2025 WL 2390734, at *2–3 (M.D. Fla. Aug. 18, 2025) (noting that evidence revealed during discovery contradicted allegations in the complaint that had sufficed at the pleading stage and suggested that the plaintiff lacked standing).

---

[2] The court notes, however, that "[t]he party seeking class certification has a burden of proof, not a burden of pleading," and "must affirmatively demonstrate . . . compliance with Rule 23 by proving that the requirements are in fact satisfied." *Brown*, 817 F.3d at 1234 (emphasis and quotations omitted). Further, "if a question of fact or law is relevant to that determination, then the district court has a duty to actually decide it and not accept it as true or construe it in anyone's favor." *Id.* (emphasis omitted).

When "a defendant makes a factual attack upon the court's subject matter jurisdiction over the lawsuit," the plaintiff "has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) (quotation omitted); *see Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021) (explaining that, as to a question of whether the plaintiff had standing, the district court was "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" (quotation omitted)); *Rosenkrantz v. Markopoulos*, 254 F. Supp. 2d 1250, 1252 (M.D. Fla. 2003) ("When standing is challenged on a factual basis, the plaintiff must demonstrate that standing exists by a preponderance of the evidence."). In such cases, "no presumptive truthfulness attaches to [a] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional issue." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). Courts "may review both the allegations in the complaint and evidence in the record so far to determine whether the named plaintiffs in this case have established Article III standing for class certification purposes." *Green-Cooper*, 73 F.4th at 888 n.6 (collecting cases). Defendant makes two attacks as to whether Plaintiffs have standing. The court first addresses the factual attack on Plaintiff Powers's standing and then turns to the broader attack as to whether either named Plaintiff has standing.

Defendant challenges whether Plaintiff Powers has suffered an "injury in connection with" any of the inpatient care "provided to her husband that she claims

as a basis for her damage claims because she owed no co-insurance and paid no co-insurance for those services." (Dkt. 168 at 11 (emphasis omitted).)  Defendant further contends that Powers "reached the out-of-pocket maximum with her husband's visit at issue," so "Powers is not a member of the damages class and therefore cannot be a class representative." (*Id.*)  The court agrees that Powers does not have standing based on her husband's inpatient visits but concludes that she does have standing as to one of her son's emergency room visits.[3]  (*See* Dkt 235.)  As to the inpatient care for Powers's husband, the court focuses its analysis primarily on the care he received between July 2–7, 2021, and briefly discusses the care he received between February 15–23, 2020.

Plaintiff Powers asserts that she has standing based on "payments made by the Brevard School Board Plan for her husband's inpatient care." (Dkt. 151.)  However, payments by Powers's insurance plan do not confer standing upon Powers.  *See Banks v. Sec'y, Dep't of Health & Hum. Servs.*, 38 F.4th 86, 93–94 (11th Cir. 2022) (explaining that a plaintiff did not suffer an injury sufficient to support standing because the plaintiff received the treatment and owed nothing for it and thus did not have a

---

[3] In the motion to certify class, Plaintiff Powers identified a trip "to the emergency room at Cape Canaveral Hospital on June 30, 2022[,] after a skateboarding accident," but noted that "no co-insurance or plan billings were made for this care," and, as a result, "she does not seek damage remedy, only injunctive relief, based on this care." (Dkt. 151 at 7–8.)  However, after the order to show cause, Powers found a different visit to the emergency room on October 29, 2020, for which money was owed but not paid. (*See* Dkt. 235 at 2; Dkt. 246-1 at 11–12.)  This visit will be the primary focus of the court's discussion, although the court will also briefly mention a separate visit to the emergency room identified at the evidentiary hearing.  This latter visit is disputed; according to Defendant, this visit occurred on July 8, 2020. (Dkt. 276-5.)  However, while Plaintiff Powers does not provide an exact date for the visit, she attests that the bill was paid on either September 15 or 16, 2020. (Dkt. 275-1.)

"personal stake in the outcome of the action" (quotation omitted)); *Hull v. Burwell*, 66 F. Supp. 3d 278, 281 (D. Conn. 2014) ("A plaintiff has no constitutional injury-in-fact that would allow her to complain in federal court when her injury consists solely of a financial liability that has been paid for in full by a third party . . . ." (quotation omitted)); *Hall v. Aetna Life Ins. Co.*, 759 F. Supp. 2d 1321, 1325–26 (N.D. Fla. 2010) (concluding that "none of the named plaintiffs suffered any injury" because "none of them were required to pay" and or had "financial responsibility for" the service at issue).

Plaintiffs also argue that Powers's "plan administrator informed [Powers] in 2021 before the original complaint was filed in 2023 that she had a $1,198.80 co-insurance obligation," that Powers "has testified she believes that this is a binding obligation," and that "she has proceeded to meet it with multiple installment payments." (Dkt. 174 at 3; *see* Dkt. 158-8 at 33 ("Q Is it your understanding that's still your responsibility? A Yes, it is.").)[4] Yet Powers's installment payments did not begin until October 2023, after this case was filed. (*See* Dkt 152-3; Dkt. 158-4 at 5 ("[B]eginning in late October 2023, [] Powers started to send checks to [Defendant] . . . .").) *See A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1212 (11th Cir. 2019) ("Importantly, Article III standing must be determined as of the time that the plaintiff's complaint is filed."). Accordingly, these payments cannot serve as the basis of Powers's injury. *See id.* (collecting cases). However, there

---

[4] The court notes that Powers's "testimony says less than what Plaintiff[s] claim[]." *See MSP Recovery Claims, Series LLC v. Ace Am. Ins. Co.*, 341 F.R.D. 636, 645 (S.D. Fla. 2022).

remains a question of whether Powers had a $1,198.80 co-insurance obligation. (*See*
Dkt. 168 at 11–12; Dkt. 174 at 3; Dkt. 189 at 11–12.)

Powers points to an explanation of benefits that she received from Cigna—
Powers's insurer—in 2021, which states that she may owe $2,098.80 and includes a
claim detail for services rendered between July 2, 2021, and July 6, 2021, that lists
$1,198.80 under the co-insurance column and $900 under the copay column. (*See* Dkt.
151 at 7; Dkt. 152-2 at 3–4; Dkt. 158-8 at 33.)  However, that document prominently
includes the following language on several pages: "This is not a bill.  Your health care
professional may bill you directly for any amount that you may owe."  (Dkt. 152-2 at
2, 3, 5, 6.)  The page that includes the $1,198.80, similarly states "[t]his is not a bill"
in the upper right-hand corner.  (*Id.* at 4.)  Powers acknowledged the inclusion of this
language during her deposition.  (Dkt. 158-8 at 12.)  As to the $2,098.80, Powers
testified that she "did not receive a bill," and "[s]ince [she] did not receive a bill, [she]
did not pay," indicating that it was her understanding that Medicare would have paid
that amount.  (Dkt. 158-8 at 12–13, 35.)  Defendant notes that the "total patient
responsibility amount of $2,098.80" derives from the fact that Powers "was responsible
for $900.00 in co-pay and $1,198.80 in co-insurance."  (Dkt. 158-4 at 4–6.)  Defendant
further explains that Powers "had secondary insurance in the form of Medicare
Advantage" which "steps in after a patient's primary insurance has paid its portion of
the contracted allowed amount for the claim."  (*Id.* at 5.)  "[T]he allowed amount
under Medicare Advantage was lower than the amount that Cigna had already paid."
(*Id.*)  Defendant explained that in such situations it does "not seek payment from the

patient" and instead "adjusts the remaining amount off the account, bringing it to a zero balance, and does not send a bill to the patient." (*Id.* (emphasis omitted); *see id.* at 14, 16.)  This adjustment occurred in July 2021, over a year and a half before this case was filed. (*Id.* at 16.)  *See De Leon v. Med. City Healthcare*, No. 3:19-CV-01574-X, 2021 WL 3130078, at *3 (N.D. Tex. July 23, 2021) (concluding that a plaintiff lacked standing to sue because the defendant wrote off the plaintiff's balance before the plaintiff filed the lawsuit); *cf. Young v. Cmty. Health Sys., Inc.*, No. 8:22-CV-329-SCB-AEP, 2022 WL 18495250, at *4 (M.D. Fla. Sep. 16, 2022) (finding that a plaintiff had standing where the defendant wrote off the plaintiff's balance after the plaintiff filed suit).

During the evidentiary hearing, Plaintiff Powers agreed that the plan made the $1,198.80 payment on her behalf and that she does not owe that amount.  Accordingly, the court concludes that Plaintiff Powers did not owe Defendant as to the inpatient care her husband received, has not suffered an injury, and lacks standing to proceed as to the inpatient care claims.[5]  *See MSP Recovery*, 341 F.R.D. at 645 (explaining that the "[p]laintiff has the obligation as movant in class certification" and concluding that injury was not established based on testimony that the plaintiff was financially responsible for a payment—which no other evidence supported—given that there was

---

[5] At the evidentiary hearing, Plaintiff Powers also identified an inpatient visit between February 15–23, 2020. (Dkt. 275-2.)  However, Plaintiff Powers did not receive or pay a bill for that visit and is not financially responsible for it because it was subject to the same process discussed above.  Accordingly, that visit also cannot provide Plaintiff Powers standing as to inpatient claims. (*See* Dkts. 232, 235, 248.)

evidence that put that allegation in doubt); *Oleary v. HCA Healthcare, Inc.*, No. 19-80647-CIV, 2020 WL 597361, at *2–3 (S.D. Fla. Feb. 4, 2020) (finding that a plaintiff lacked standing because the plaintiff was not sent an invoice or other demand seeking payment, the itemization of hospital services that the plaintiff received included a notice that it was not a bill, and the defendant introduced evidence that the defendant wrote off the account before the complaint was filed).

However, the court concludes that Plaintiff Powers has standing as to emergency room care based on her son's visit on October 29, 2020, for which she owes money but has not yet paid.[6] (*See* Dkt. 248 at 11–12 (explaining that Defendant billed Powers $365.75—$22.68 in co-insurance and $343.07 in co-payment—for her son's care, but she has not yet paid the balance).) Neither Plaintiffs nor Defendant dispute that Powers remains financially liable for that visit and that is sufficient to satisfy the injury prong, thereby establishing standing for Powers as to the emergency room

---

[6] At the evidentiary hearing, the parties disputed whether a payment for $356.93 on September 16, 2020, was a co-insurance payment made for services rendered to Plaintiff Powers's husband or a deductible payment for services rendered to Powers herself. (*See* Dkts. 275, 275-1, 276-5.) This is significant because, if the payment was for a deductible, it would not provide Plaintiff standing to sue over co-insurance. The parties agree that the payment was for emergency room services. After reviewing the records and considering the witnesses' testimony, the court is inclined to find that the payment was a deductible payment for services rendered to Powers. The court credits the records and testimony of Defendant—which include the date of the services rendered, the name of the patient, the amount owed, the amount paid, what the payments were for, and the dates on which payments were made—over Powers's testimony. (*See* Dkt. 276-5.) While Powers points to records from her total administrative services corporation (TASC) account, those records do not state when the services were rendered or what the payment was for, and both the amount and the dates align with Defendant's records. (*See* Dkts. 275-1, 276-5.) Plaintiff Powers further testified that her husband handled all health care matters and that she has no documentation to show that the payment was for co-insurance and not a deductible. Thus, at this stage, the court is not convinced by a preponderance of the evidence that the payment was for co-insurance. *See Paterson*, 644 F.2d at 523 (5th Cir. 1981) (explaining that when "a defendant makes a factual attack upon the court's subject matter jurisdiction over the lawsuit," the plaintiff "has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction" (quotation omitted)).

claims. *See Banks*, 38 F.4th at 93 (holding that a plaintiff "suffered no injury because he is not financially liable"); *Prosser v. Becerra*, 2 F.4th 708, 715 (7th Cir. 2021) (explaining that injury was not established where the plaintiff owed nothing); *Krysten C. v. Blue Shield of Cal.*, 721 F. App'x 645, 646 (9th Cir. 2018) (determining that the plaintiff had standing because she was obligated to pay despite having not yet done so); *Delgado v. ILWU-PMA Welfare Plan*, No. CV 18-05539 CBM (EX), 2021 WL 1324437, at *2 (C.D. Cal. Mar. 2, 2021) (concluding that the "[p]laintiffs had standing to bring [a] suit because they were financially liable for medical expenses" (quotation omitted)).[7]

As to Defendant's broader argument, Defendant asserts that "Plaintiffs have presented no evidence . . . that [they] paid too much in co-insurance," and thus have not suffered an injury sufficient to confer standing. (Dkt. 168 at 9 (emphasis omitted).) Still, at the class-certification stage, the Eleventh Circuit has repeatedly applied a pleading standard in evaluating whether a named plaintiff has standing so long as there are no "facts developed in discovery [that] firmly contradict the allegation[s] in the complaint." *See Green-Cooper*, 73 F.4th at 891; *Williams*, 65 F.4th at 1254 (applying a pleading standard); *Smith*, 93 F.4th at 1212 n.7 (same). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice."

---

[7] Although the court concludes that Powers has standing based on this amount owed, the court notes that Powers would not be a member of the class as presently defined because she has not actually paid any co-insurance. (*See* Dkt. 151 at 1–2; Dkt. 152-4 at 59 (explaining that "accounts where the payor did not make a payment and the patient did not pay a co[-]insurance amount are not included in the [cl]lass).) However, because the court also declines to certify the class as presently defined for additional reasons explained below, the court similarly declines to determine whether Powers can represent a nonexistent class.

*Lujan*, 504 U.S. at 561.  Here, Plaintiffs allege that they each had a family member covered by their health plans and for whom they paid co-insurance who received care in one of Defendant's hospitals during the relevant period.  (Dk. 56 at 5–6, 42.) Plaintiffs also allege that Defendant's "prices charged for inpatient and emergency room hospital care to patients, and the health plans insuring patients, are substantially above competitive levels." (*Id.* at 40.)  *See In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 398–99 (M.D. Fla. 2018) (noting that the plaintiffs in an antitrust case need not have direct evidence and rejecting the defendants' argument that the "[p]laintiffs cannot show injury and standing on a class-wide basis using common evidence").  Defendant does not dispute these allegations.  Instead, Defendant asserts that "Plaintiffs have presented no evidence . . . that [they] paid too much in co-insurance." (Dkt. 168 at 10.)  Accordingly, because a pleading standard applies and Defendant does not point to evidence that contradicts Plaintiffs' allegations, Plaintiffs have adequately pleaded that they paid too much in co-insurance.  (*See* Dkt. 168 at 8–10.)  *Cf. Green-Cooper*, 73 F.4th at 890 (concluding that two plaintiffs lacked standing because facts alleged in discovery, specifically the dates they went to a restaurant, were contradicted by later discovered evidence).[8]

---

[8] Even if the heightened preponderance of the evidence standard applied, Gale's opinions would likely satisfy that standard.  (*See* Dkts. 56-1, 158-3, 158-10, 158-14, 176-1.)  *See also Lawrence*, 919 F.2d at 1530–31 (explaining that when an "attack on jurisdiction is also an indirect attack on the merits" and "there is a dispute as to a material fact" "it is incumbent upon the trial judge to demand less in the way of jurisdictional proof than would be appropriate at a trial stage" (quotation omitted)).

Although the court concludes that Plaintiffs Rosean and Powers have standing as to emergency room care, no named plaintiff has standing as to inpatient care and "standing is not dispensed in gross." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). "It is not enough that a named plaintiff can establish a case or controversy between h[er]self and the defendant by virtue of having standing as to one of many claims [s]he wishes to assert;" rather, "each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Prado-Steiman*, 221 F.3d at 1280. For example, in *Griffin v. Dugger*, the Eleventh Circuit held that the named plaintiff had standing to challenge certain practices of the defendant, but not others. 823 F.2d 1476, 1483–84 (11th Cir. 1987). Accordingly, the Eleventh Circuit held "that the district court erred when it" certified the class and permitted the plaintiff to also challenge those practices for which he did not have standing. *Id.* at 1484.

Because no named plaintiff has standing to represent the class as to inpatient care, a single class cannot be certified. *See Prado-Steiman*, 221 F.3d at 1283 (vacating and remanding a district court order granting class certification because the "[p]laintiffs ha[d] not demonstrated that . . . the named class representatives possess[ed] standing to raise all of the class's claims" and advising that "the wisest course may be to divide this single class into subclasses"). Accordingly, the court must deny Plaintiffs' motion. *See Dukes*, 564 U.S. at 348–49 ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." (quotation omitted)); *Colucci v. Health First, Inc.*, No. 6:21-CV-681-RBD-

DAB, 2022 WL 18926772, at *2 (M.D. Fla. Dec. 22, 2022) ("Because neither [p]laintiff seeks to recover for inpatient . . . treatment[] and their claims fall outside the class's claims, they lack standing to bring these claims on behalf of the class."); *Blobner v. R.T.G Furniture Corp.*, No. 8:17-CV-1676-T-30SPF, 2019 WL 3808130, at *3–4 (M.D. Fla. July 24, 2019) (concluding that the named plaintiff lacked standing and that this "defect [wa]s fatal to [the plaintiff's] proposed class").[9]

Even if standing were not an issue, Plaintiffs cannot satisfy the Rule 23 requirements for class certification. The court completes the analysis below. *See DiPierro*, 737 F. Supp. 3d at 1331 (conducting Rule 23 analysis after concluding that the named plaintiffs lacked standing); *Simmons v. Ford Motor Co.*, 592 F. Supp. 3d 1262, 1284 (S.D. Fla. 2022) (proceeding to the rest of the Rule 23 analysis despite finding that the plaintiffs class "could only survive from a standing perspective if divided into an astounding twenty subclasses" and would "still [be] inherently flawed").

## B. Adequacy of Class Definition and Ascertainability

"Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (quotation omitted). "A class is ascertainable if

---

[9] Certification is also inappropriate because the individual standing assessment overlaps with the typicality requirement to certify a class; if a representative lacks standing to raise claims on behalf of the entire class, then the representative's claims are not typical of the class. *See Prado-Steiman*, 221 F.3d at 1279 ("[T]here cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class."). The court addresses this further below.

membership is based on objective criteria." *Mount v. Pulte Home Co., LLC*, No. 6:20-cv-2314-RBD-LRH, 2022 WL 3446217, at *2 (M.D. Fla. Aug. 17, 2022). "[A] vague class definition portends significant manageability problems for the court." *Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 660 (M.D. Fla. 2001).

Plaintiffs seek certification of the following class:

> Plaintiffs represent a [c]lass of (a) persons insured by health plans and (b) their health plans which purchase inpatient and emergency room hospital care from [Defendant's] acute care hospitals on behalf of the persons, or members of the persons' families covered by their health plans. Covered [c]lass care is ascertained and identified by (a) [Defendant's] hospital inpatient place of service location code 21 ([Defendant's] inpatient facilities) and Diagnostic Related Group ([]DRG[]) codes which [Defendant] is required to maintain and use for claim processing by federal and state mandate; and (b) [Defendant's] hospital emergency place of service location code 23 ([Defendant's] emergency room facilities) and Current Procedural Terminology ([]CPT[]) codes, codes which [Defendant] is required to maintain and use for claim processing by federal and state mandate.

(Dkt. 151 at 1.)

### 1.  Adequacy of Class Definition

Defendant argues that the proposed class that Plaintiffs seek to certify is broader than the class alleged in the first amended complaint. (Dkt. 168 at 12–13.)  The crux of the issue is that, in the first amended complaint, Plaintiffs explain:

> Covered [c]lass care is ascertained and identified by (a) [Defendant's] hospital inpatient place of service location code 21 ([Defendant's] inpatient facilities) and including in part care provided there under the Diagnostic Related Group ([]DRG[]) codes listed in Exhibit B hereto, codes which [Defendant] is required to maintain and use for claim processing by federal and state mandate; and (b) [Defendant's] hospital emergency place of service location code 23 ([Defendant's] emergency room facilities) and including in part care provided there under Current Procedural Terminology ([]CPT[]) codes listed in Exhibit C hereto, codes

> which [Defendant] is required to maintain and use for claim processing
> by federal and state mandate.

(Dkt. 56 at 42.)   Plaintiffs noted that "[c]lass member DRG and CPT coding identifying [c]lass care is being augmented as a result of this ongoing discovery into [Defendant's] billing and coding, and by expert analysis." (*Id.* at 43.)  In their motion to certify class, Plaintiffs state that "[a]s contemplated in [the first amended complaint], the sample DRG and CPT illustrative codes provided . . . have been revised or augmented after expert analysis—and full discovery—to test the capacities of Plaintiff[s] class methodologies to be used at trial."  (Dkt. 151 at 2.)  However, Defendant responds that "Plaintiffs' class definition is limited to 137 DRG and 167 CPT codes," and Defendant's position is supported by the fact that Plaintiffs' counsel represented at a discovery hearing that he had only asked for the specific number of codes outlined in the first amended complaint "because the other codes were[ no]t needed as the class is defined."  (Dkt. 168 at 13 (quotation omitted).)

"[C]lass definitions may undergo modification, possibly several times, during the course of a class action."  *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1133 n.16 (11th Cir. 2004).  Nevertheless, some courts have hesitated to permit Plaintiffs to "expand the scope of the proposed class at the certification stage," especially where such expansion "would amount to an eleventh-hour amendment of the pleadings far beyond the . . . deadline to amend."  *Bouton v. Ocean Props., Ltd*, 322 F.R.D. 683, 693–94 (S.D. Fla. 2017) (emphasis omitted); *see id.* at 693 ("Although a plaintiff may seek to certify a class definition narrower than the one proposed in the operative pleading

without a new claim for relief, the converse is not allowed." (emphasis omitted)); *Ohio State Troopers Ass'n, Inc. v. Point Blank Enters., Inc.*, 347 F. Supp. 3d 1207, 1233 n.12 (S.D. Fla. 2018) (noting that the plaintiffs "improperly s[ought] to broaden the scope of the proposed class in the amended complaint" even where "the amended complaint contain[ed] some references" to the group that the plaintiffs sought to expand the class definition to include); *Lawrence v. S. Fla. Racing Ass'n, LLC*, No. 18-CV-24264-UU, 2019 WL 3890314, at *4 (S.D. Fla. June 28, 2019) (stating that the plaintiff had "proposed a class period . . . in the operative pleading, but then impermissibly expanded the class period" in the motion to certify class). Here, the pleading deadline passed on September 13, 2023. (*See* Dkt. 38.)

Ultimately "[t]he class definition is a tool of case management" that "settles the question who the adversaries are, and so it enables the defendant to gauge the extent of its exposure to liability and it alerts excluded parties to consider whether they need to undertake separate actions in order to protect their rights." *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 810 (7th Cir. 2013). Although the "[m]otion's definition is broader than that in the [first a]mended [c]omplaint, . . . it does not add defendants, new theories of liability, or types of claims." *See MSP Recovery Claims, Series LLC v. Ace Am. Ins. Co.*, 341 F.R.D. 636, 645–46 (S.D. Fla. 2022); *cf. Ohio State Troopers*, 347 F. Supp. 3d at 1232 n.12 (rejecting expansion to include users in addition to product purchasers); *Bouton*, 322 F.R.D. at 692–94 (rejecting class with new defendant-entities and theories of liability); *Lawrence*, 2019 WL 3890314, at *5 (rejecting new class definition with additional entities and types of claims). Here, "the [c]ourt has already

reviewed these class definitions," *Belin v. Health Ins. Innovations, Inc.*, 337 F.R.D. 544, 555 (S.D. Fla. 2021), including the forewarning that the "[c]lass member DRG and CPT coding identifying [c]lass care is being augmented as a result of this ongoing discovery," (Dkt. 56 at 43). Nevertheless, because other grounds support the decision not to certify the class, the court declines to decide whether Plaintiffs can expand their class definition in the motion to certify at this time.

### 2.  Ascertainability

"Ascertainability is an implied prerequisite of Rule 23." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021). "Traditionally, [courts] have collapsed class definition and ascertainability into one inquiry." *Id.* "A class is inadequately defined if it is defined through vague or subjective criteria" and "without an adequate definition for a proposed class, a district court will be unable to ascertain who belongs in it." *Id.* Defendant makes several arguments as to why Plaintiffs cannot rely on Gale to identify the patients and payers who meet the criteria for class membership and to exclude those who do not. (Dkt. 168 at 16–20.) Yet Defendant does not argue that the class is "defined through vague or subjective criteria," and thus does not undermine a finding that the class is adequately defined and clearly ascertainable. *See Cherry*, 986 F.3d at 1302. Defendant instead argues that the data that Gale analyzed was inadequate and notes that Gale has not yet identified the entire class. (Dkt. 168 at 16 (stating that Gale examined and tested data "from just one payer that contracts with" Defendant, did so "only for inpatient services," and "for only three years out of the more than six years at issue"); *id.* at 18 (noting that "Gale did not review, much less

- 22 -

analyze, the payment data [Defendant] produced[] and thus cannot offer an opinion that he could ascertain every patient excluded from the class due to payment issues").) However, "[c]lass members need not actually be ascertained prior to certification;" rather, "each individual's class membership must be ascertainable at some stage in the proceeding." *Bush v. Calloway Consol. Grp. River City, Inc.*, No. 3:10-cv-841-J-37MCR, 2012 WL 1016871, at *4 (M.D. Fla. Mar. 26, 2012); *see Cherry*, 986 F.3d at 1303 ("A class is clearly ascertainable if we are certain that its membership is capable of being determined." (quotation omitted)).[10]

Defendant also contends that "Gale cannot reliably identify all the patients excluded by the proposed [c]lass definition." (Dkt. 168 at 17 (arguing that Gale cannot reliably exclude those "who reached their out-of-pocket maximum during the calendar year of the relevant" services); *id.* at 18–20 (alleging that "Gale cannot determine health plan class members whose payments are made by an insurer providing administrative services only"); *id.* at 20 (asserting that "the data does not identify which patients have met their out[-]of[-]pocket maximum for the plan year and thus would not be members of the class" and that Gale "has offered no means of linking individual patients with the terms of their health plans").) Nonetheless, "[a]n identifiable class exists if its members can be ascertained by reference to objective criteria." *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir.

---

[10] While Defendant contends that there is "no reason to expect that [Gale] will receive all of the . . . data he wants in a form suitable for his analysis," the converse is equally true. (Dkt. 168 at 17.)

2014).   "[A]dministrative difficulties—whether in class-member identification or otherwise—do not alone doom a motion for certification."  *Cherry*, 986 F.3d at 1304. In fact, "administrative feasibility is not a requirement for certification under Rule 23." *Id.*  Rather, "a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination."  *Id.*  Although Defendant certainly points out difficulties in determining who is part of the class, it is nonetheless "capable of determination," and thus ascertainable.  *See id.*  Accordingly, the court concludes that the proposed class is adequately defined and clearly ascertainable.

### C. Rule 23(a) Factors

#### 1. Numerosity

A class action is appropriate "only if . . . the class is so numerous that joinder of all members is impracticable."   Fed. R. Civ. P. 23(a)(1).   "As a general rule, . . . more than forty class members will be adequate to meet the numerosity requirement, while fewer than twenty-one class members will be inadequate." *Mills v. Foremost Ins. Co.*, 269 F.R.D. 663, 670 (M.D. Fla. 2010).

Plaintiffs do not specify a precise number of potential class members, but they note that Defendant's "transaction and billing databases for covered inpatient and emergency room care indicate that thousands of patients and their plans have received inpatient and emergency room care in the [c]lass damage period since 2019."  (Dkt. 151 at 10; *see id.* at 26.)  *See Evans v. U.S. Pipe & Foundry Co.,* 696 F.2d 925, 930 (11th Cir. 1983) ("[A] plaintiff need not show [a] precise number of members in the class.").

Nor does Defendant dispute numerosity. (*See* Dkt. 168.) Accordingly, the court concludes that there are an adequate number of members in the proposed class such "that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). As a result, the court finds that the numerosity requirement is satisfied. *See In re Terazosin Hydrochloride*, 220 F.R.D. 672, 685 (S.D. Fla. 2004) (finding that the numerosity requirement was satisfied where there were thousands of members of the classes).

### 2. Commonality

Commonality requires "questions of law or fact common to the class . . . ." Fed. R. Civ. P. 23(a)(2). To satisfy this element, the class members' "claims must depend upon a common contention," and that common contention "must be of such a nature that it is capable of class[-]wide resolution." *Sliwa v. Bright House Networks, LLC*, 333 F.R.D. 255, 273–74 (M.D. Fla. 2019) (quoting *Dukes*, 564 U.S. at 350). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Carriuolo*, 823 F.3d at 984 (quoting *Dukes*, 564 U.S. at 359); *accord Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) ("Commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members.").

Plaintiffs maintain that there are "common issues as to monopolization and the three other antitrust violations, including the definitions of the relevant product and geographic markets[,] [Defendant's] market power in the relevant market[,] and the exclusionary conduct maintaining [Defendant's] market power and monopoly

overcharging." (Dkt. 151 at 10–11.) Defendant does not disagree. (*See* Dkt. 168.) "[I]n the antitrust context, courts in this [c]ircuit have consistently held that allegations of price-fixing, monopolization, and conspiracy by their very nature involve common questions of law or fact." *In re Terazosin Hydrochloride*, 220 F.R.D. at 686 (collecting cases). Therefore, the commonality requirement is satisfied. *See In re Disposable Contact Lens Antitrust*, 329 F.R.D. at 407 (finding that the commonality requirement was satisfied in an antitrust case).

### 3. Typicality

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The class representatives' claims need not be identical to those of the individual class members; "there need only exist a sufficient nexus between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) (cleaned up). "This nexus exists 'if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *Id.* (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)). Furthermore, "[a] class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1275 (11th Cir. 2009) (quoting *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008)). Lastly,

the presence of substantial factual differences does not negate a finding that the typicality requirement has been met so long as "there is a strong similarity of legal theories." *Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1259 (11th Cir. 2014) (quoting *Williams*, 568 F.3d at 1357).

Plaintiffs contend that the claims of the named Plaintiffs and "other patient members of the [c]lass[] all arise in common" from Defendant's "conduct maintaining its market power and enabling its monopoly overcharging of members of the [c]lass." (Dkt. 151 at 11–12.) Thus, according to Plaintiffs, "[t]he antitrust price injury for all is alleged to be monopoly overcharging levied on each relevant procedure during the damage period." (*Id.* at 12.) Plaintiffs acknowledge that "[t]his monopoly overcharging is shared by the patient (through co-insurance payments) and the associated payments of the patient's plan" with the patient typically paying 20% and "the patient's plan pay[ing] the remainder." (*Id.*) Defendant disputes whether Plaintiffs satisfy the typicality requirement because "Plaintiffs' claims turn on whether [Defendant] charged a price—one based on complex, recurring negotiations between [Defendant] and separate commercial insurers—that is supra-competitive" and thus resolving each plaintiffs claim "would, at most, prove only that the price negotiated at that time by her insurer . . . for her specific service was supra-competitive." (Dkt. 168 at 21 (emphasis omitted).)

As noted above, "typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large" and "[w]ithout individual standing to raise a legal claim, a named representative does not have the

requisite typicality to raise the same claim on behalf of a class." *Prado-Steiman*, 221 F.3d at 1279. Here, the court has determined that the named Plaintiffs have standing as to emergency room claims, but "a plaintiff who has been subject to injurious conduct of one kind" does not "possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which [s]he has not been subject." *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982). Because the court concludes that no named Plaintiff has standing to raise claims as to inpatient services, the typicality requirement is not satisfied. (*See* Dkt. 56.) *See Prado-Steiman*, 221 F.3d at 1283 (concluding that the "[p]laintiffs ha[d] not demonstrated that the claims of the named class representatives possess the requisite typicality with the claims of the class at large, or that the named class representatives possess standing to raise all of the class's claims").

Additionally, as Defendant points out, the named Plaintiffs' claims "involve different policyholders, different medical services, different billing codes," and, most notably, "different defenses," that would require "an entirely different set of facts and legal conclusions" from some members of the class, specifically the health plans. *See DWFII Corp. v. State Farm Mut. Auto. Ins. Co.*, 271 F.R.D. 676, 688 (S.D. Fla. 2010) (finding that typicality was not satisfied where the plaintiff and every member of the putative class "would have to demonstrate that it was entitled to the reimbursement in the first place, that [the defendant] had no set-off or unbundling defense for limiting the reimbursement, and that [the plaintiff] met the pre-suit demand requirements to state a claim under the" statute), *aff'd*, 469 F. App'x 762, 765 (11th Cir. 2012)

- 28 -

(affirming the denial of class certification where "each claim would require the establishment of different facts and would be subject to different defense"). (*See* Dkt. 168 at 21.) Health plans in the proposed class, unlike the named Plaintiffs and other individuals, may have to plead additional "facts to suggest plausibly that they did not charge their enrollees premiums or, in turn, adjust those premiums to compensate for" Defendant's alleged conduct. *See Ironworkers Loc. Union 68 v. AstraZeneca Pharms., LP*, 634 F.3d 1352, 1364 (11th Cir. 2011) (explaining that "[i]nsurers, to sustain profitability, charge their enrollees an up-front fee, i.e., a premium, in exchange for insurance coverage" and will typically "adjust premiums to compensate for known risks assumed under that coverage" (quotation omitted)).[11]

Thus, because some members of the proposed class have potentially different interests and injuries than the named Plaintiffs, the court concludes that Plaintiffs have not met their burden of showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

### 4. Adequacy of Class Representation

The final Rule 23(a) element requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy refers "to both the named plaintiff[s] and counsel." *London v. Wal-Mart Stores, Inc.,* 340 F.3d 1246, 1253 (11th Cir. 2003). The adequacy of representation requirement "encompasses two separate inquiries: (1) whether any substantial conflicts of interest

---

[11] Defendant makes this argument under adequacy, but because the court concludes that it more appropriately goes to typicality, the court considers it here. (*See* Dkt. 168 at 22.)

exist between the representatives and the class[] and (2) whether the representatives will adequately prosecute the action." *Valley Drug*, 350 F.3d at 1189 (quotation omitted). The adequacy requirement also concerns whether the plaintiff's counsel is "qualified, experienced, and generally able to conduct the proposed litigation." *Griffin*, 755 F.2d at 1533.

Plaintiffs maintain that they are adequate representatives because they are members of the class, they wished to serve as class representatives, they are capable of devoting time and effort to being class representatives, they would work with counsel to vigorously represent the class, and they were familiar with the allegations made on behalf of the class. (Dkt. 151 at 13–18.) Plaintiffs' attorneys also maintain that they have extensive experience prosecuting complex class actions. (*See id.*) Defendant does not challenge the qualifications of Plaintiffs' attorneys or the attorneys' ability to prosecute this action. (*See* Dkt. 168.) After reviewing the record, the court is satisfied that Plaintiffs' attorneys are qualified, experienced, and can adequately prosecute this action.

At the same time, Defendant maintains that a fundamental conflict of interest exists between the named Plaintiffs and other individuals in the class and the health plans. (*Id.* at 21–25.) "A fundamental conflict exists where some party members claim to have been harmed by the same conduct that benefitted other members of the class." *Valley Drug*, 350 F.3d at 1189. "In such a situation, the named representatives cannot vigorously prosecute the interests of the class . . . because their interests are actually or potentially antagonistic to, or in conflict with, the interests and objectives of other class

members." *Id.* (quotation omitted). Such a conflict exists when "the economic reality of the situation leads some class members to have economic interests that are significantly different from—and potentially antagonistic to—the named representatives purporting to represent them." *Id.* at 1195.

Defendant contends that "any change in the amount that [Defendant] charges will have a significant effect on whether the harm resulting from any calculated overcharge will fall primarily to the individual patient or whether it will be absorbed by their payer because the payer might alter the payment structure for their insureds (e.g., by increasing co-insurance or substituting co-insurance for deductibles)." (Dkt. 168 at 22 (quotation omitted).) As a result, "one part of the class dictates whether and to what extent the other part of the class is harmed by [Defendant's] alleged conduct." (*Id.*) Plaintiffs respond that the named Plaintiffs "have no conflict with other members of the [c]lass, let alone a fundamental conflict," because "all patients and their plans in the [c]lass seek monopoly overcharge and injunctive remedy for the same exclusionary and anticompetitive acts." (Dkt. 151 at 17.) They also reason that "[m]onopoly overcharging is shared by the patient . . . and the associated payments of the patient's plan" so there is no fundamental conflict. (Dkt. 174 at 6.)

The court is not convinced by Plaintiffs' unsupported assertions. (*See* Dkt. 151 at 12; Dkt. 174 at 6.) As the party seeking class certification, Plaintiffs must affirmatively demonstrate their compliance with Rule 23. *Dukes*, 564 U.S. at 350. Plaintiffs' argument that there is no conflict is based on an unsubstantiated generalization that "[t]he patient pays the co-insurance for a billing (typically 20% of

- 31 -

[Defendant's] monopoly billing) and the patient's plan pays the remainder (typically 80%)." (Dkt. 151 at 12; Dkt. 174 at 6.)  Nonetheless, as noted above, "insurers adjust premiums to compensate for known risks" and "the premium charged enrollees is essential to insurers' goal of profitable outcomes from their insurance bargains." *Ironworkers*, 634 F.3d at 1364.  This "contractual bargain with enrollees" is "a conscious gamble with profitability," to see who benefits more from the bargain, the health insurers or the insured, meaning that the interests of these two groups are fundamentally juxtaposed.  *Id.*; *see id.* at 1365 (explaining that an "insurance contract represents a conscious bargain in which both sides hope to, at least, come out even— but know they might not" because "when the claims exceed the insurers' projections, they bear the loss" but when "the premiums received exceed the value of the claims paid by the insurers, the enrollees bear the loss because the insurers keep the remaining premium proceeds" so an "insurer will fund . . . higher costs through escalated premiums").

Thus, the court concludes that interests of the named Plaintiffs and other individuals of the purported class and those of their health plans are "actually or potentially antagonistic to, or in conflict with, the interests and objectives of" each other.  *See Valley Drug*, 350 F.3d at 1189; *accord Warren v. City of Tampa*, 693 F. Supp. 1051, 1061 (M.D. Fla. 1988) ("Conflicts pertaining to the specific issues being litigated will bar class certification."); *see also In re Photochromic Lens Antitrust Litig.*, No. 8:10-CV-00984-T-27EAJ, 2014 WL 1338605, at *10 (M.D. Fla. Apr. 3, 2014) ("It follows that a class cannot be certified when some members of the class benefitted from the

alleged wrongful conduct, such that the proposed class consists of winners and losers."). Based on this conflict, Plaintiffs have not met their burden of showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). As a result, the proposed class will not be certified because Plaintiffs have also failed to demonstrate both typicality and adequacy.

### D. Rule 23(b)(2) Certification

Plaintiffs seek class certification under Federal Rule of Civil Procedure 23(b)(2). (Dkt. 151 at 31–31.) Plaintiffs contend that the class should be certified under Rule 23(b)(2) because "antitrust violations have imposed class[-]wide price injury and stifled competition in the past, and continue to threaten such injury in the future." (*Id.* at 32.) Thus, "[t]o the extent [Defendant] maintains its market power in the relevant market by its exclusionary conduct," Plaintiffs seek injunctive relief. (*Id.*)

"[A]n injunction demanding that a party do nothing more specific than obey the law is impermissible." *Elend v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006) (quotation omitted). "An injunction must therefore contain an operative command capable of enforcement." *Hughey v. JMS Dev. Corp.*, 78 F.3d 1523, 1531 (11th Cir. 1996) (quotation omitted). Without specific and enforceable language, an injunction "does not give the restrained party fair notice of what conduct will risk contempt." *Id.* Accordingly, to the extent that Plaintiffs seek an injunction to require Defendant to obey the law and not engage in anticompetitive conduct, it is denied. *See United States v. Askins & Miller Orthopaedics, P.A.*, 924 F.3d 1348, 1361 (11th Cir. 2019) (explaining that obey-the-law "injunctions are disfavored because they often run afoul of Rule

- 33 -

65(d)'s requirement that injunctions state their terms specifically and describe in reasonable detail the act or acts restrained or required" (quotation omitted)); *Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999) (holding that an injunction that only seeks to instruct the defendant to "obey the law" is improper); *Novo Nordisk, Inc. v. Brooksville Pharms. Inc.*, 785 F. Supp. 3d 1123, 1138 (M.D. Fla. 2025) (concluding that an injunction that prevented the defendant "from continuing its unlawful and unfair business practices" constituted an obey-the-law injunction (alteration adopted and quotation omitted)); *Colomar v. Mercy Hosp., Inc.*, 242 F.R.D. 671, 683 (S.D. Fla. 2007) (declining to certify a Rule 23(b)(2) class because the court determined that "an order enjoining [the defendant] from continuing to overcharge plaintiff and the [c]lass," was "not specific, clear[,] or enforceable enough to comport with [Federal Rule of Civil Procedure] 65(d)" (quotation omitted)).

Additionally, claims for monetary relief may not be certified under Federal Rule of Civil Procedure 23(b)(2). *Dukes*, 564 U.S. at 360–61. ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. . . . [I]t does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."). Here, Plaintiffs' "claims are ones primarily seeking money damages," and thus "Plaintiffs do not meet the criteria for certification under Rule 23(b)(2)." *See In re Disposable Contact Lens*, 329 F.R.D. at 411; *see also Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1155 (11th Cir. 1983) (noting that Rule 23(b)(2) classes were "not intended to extend to cases in which the appropriate relief relates exclusively or predominately to monetary

damages" (quotation omitted)); *DWFII Corp.*, 271 F.R.D. at 686 (explaining that a Rule 23(b)(2) class could not be certified because the plaintiff "failed to demonstrate that the money damages [were] incidental" (quotation omitted)); *Colomar*, 242 F.R.D. at 682–83 (declining to certify a Rule 23(b)(2) class because the monetary relief the plaintiff sought was "not merely incidental to the declaratory or injunctive relief requested" especially where "a finding of class-wide liability in this case would not automatically entitle class plaintiffs to some fixed, uniform damages recovery, but would instead still require an individual analysis of what their total charges . . . were, what portion of those charges were unreasonable, and what amount plaintiffs overpaid" (quotation omitted)).[12]

---

[12] The court also questions whether Plaintiffs have standing to seek injunctive relief. *See AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*, 938 F.3d 1170, 1179 (11th Cir. 2019) ("In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that [s]he will suffer injury in the future." (quotation omitted)). Here, Plaintiffs have pleaded no facts from which it appears there is a substantial likelihood that they will suffer injury in the future, simply that they have allegedly suffered injury in the past. (*See* Dkts. 56, 151.) *See O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects."); *Wasser v. All Mkt., Inc.*, 329 F.R.D. 464, 471 (S.D. Fla. 2018) (finding that a named plaintiff in a class action must "allege something more than past" harm "to provide them standing to proceed on behalf of the [i]njunctive [c]lasses"); *Colucci*, 2022 WL 18926772, at *2 n.4 ("Certification of an injunctive class here would be inappropriate for the additional reason that [the p]laintiffs failed to establish a real and immediate threat of future injury to establish Article III standing."); *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-J-32MCR, 2020 WL 4287270, at *4 (M.D. Fla. July 27, 2020) (concluding that the plaintiffs "failed to allege a threat of future harm" sufficient to confer standing as to injunctive relief).

### E. Rule 23(b)(3) Certification

#### 1. Predominance

Plaintiffs also seek class certification under Rule 23(b)(3).  (Dkt. 151 at 18–31.) The requirement that common questions of law or fact predominate means "the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole[] must predominate over those issues that are subject only to individualized proof." *Kerr v. City of W. Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989) (quotation omitted).  An individual issue "is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof."  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (alteration adopted and quotation omitted). Thus, common issues do not predominate if "as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues." *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (quotation omitted).  Here, Plaintiffs maintain there is "predominate proof of antitrust violations[] and resulting antitrust price injury."  (Dkt. 151 at 19.) Defendant contends that individual issues predominate.  (Dkt. 168 at 25–33.)

The court concludes that Plaintiffs' ability to demonstrate that "many or most of the putative class members . . . suffered an injury fairly traceable to [D]efendant's misconduct," and thus have standing, "poses a powerful problem under Rule 23(b)(3)'s predominance factor." *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1273

- 36 -

(11th Cir. 2019) (emphasis omitted); *see id.* at 1275 (explaining that "each plaintiff [would] likely have to provide some individualized proof that they have standing" and that "[w]hen this standing question is added to the mix, individualized questions may predominate over common issues susceptible to class-wide proof"). "[W]hether absent class members can establish standing may be exceedingly relevant to the class certification analysis required by [Rule 23]." *Id.* at 1273. "[A]t some time in the course of the litigation[,] the district court will have to determine whether each of the absent class members has standing before they [can] be granted any relief." *Id.* at 1275. "That is an individualized issue," and a district court must consider it in the predominance inquiry under Rule 23(b)(3). *Id.*

Here, some of the proposed class members, like Powers, suffered no injury and thus lack standing. (*See* Dkt. 168 at 17–20 (explaining that patients who reached their out-of-pocket maximum during the calendar year of the relevant services and those who had secondary insurance, among others, would not have standing, and determining whether an individual had standing would require an individualized inquiry).)[13] Reviewing thousands of claims to determine which class members suffered an injury sufficient to confer standing would require individualized legal and factual analyses that ordinarily prevent a finding of predominance under Rule 23(b)(3). *See Green-Cooper*, 73 F.4th at 893 n.13 (remanding a case so that a district court could determine whether "each plaintiff will likely have to provide some individualized

---

[13] Defendant makes this argument as to ascertainability, but the court determines that it should be considered under the predominance analysis. (*See* Dkt. 168 at 17–20.)

proof that they have standing" (quotation omitted)); *DiPierro*, 737 F. Supp. 3d at 1331 ("Plaintiffs' standing problems would also likely result in an intractable predominance problem under Rule 23(b)(3) . . . ."); *Marrow*, 2025 WL 2390734, at \*5 (concluding that "[t]he individualized standing issues within either proposed class prevents certification under Rule 23(b)(3)" because "[f]or each class member, [the court would] have to determine whether they suffered an injury-in-fact" which would "require review of insurance records and medical expenses for each and every class member").

Plaintiffs assert that they can "demonstrate class[-]wide antitrust price injury (or impact) with proof that is predominately common," and that "[n]one of this analysis requires individual class member testimonies or discovery," but Plaintiffs' assertion is incorrect as to the standing analysis, as demonstrated by the analysis as to Powers's injury. (Dkt. 151 at 21–22 (emphasis omitted).)  Therefore, even if Plaintiffs met their burden under Rule 23(a), which they have not, they have not satisfied their burden of establishing predominance under Rule 23(b)(3).  *See Carter v. City of Montgomery*, 108 F.4th 1334, 1342 (11th Cir. 2024) (explaining that "whether the putative class members can show that they suffered an injury fairly traceable to the defendant's misconduct—which runs to their standing to sue, their ability to prove a legal violation, and their right to relief—is a relevant factor that a district court must consider when deciding whether the predominance requirement is satisfied" and concluding that because the claims alleged "turn[ed] on a host of individualized facts" that bore on "the plaintiffs' alleged injuries[,] . . . and thus on the plaintiffs' standing," "the district court did[ no]t abuse its discretion in finding a lack of predominance under

- 38 -

Rule 23(b)(3)" (quotation omitted)); *Theus v. Brinker Int'l, Inc.*, No. 3:18-CV-686-TJC-MCR, 2025 WL 1786346, at *4 (M.D. Fla. June 27, 2025) (concluding that predominance was not satisfied because establishing injury sufficient to confer standing would predominate over common questions); *Davis v. Mar-Jac Poultry, LLC*, No. 6:18-CV-1433-LSC, 2024 WL 218510, at *10 n. 14 (N.D. Ala. Jan. 19, 2024) ("[T]he individualized questions regarding each class member's standing . . . show[] that individual questions predominate.").

### 2. Superiority and Manageability

The Rule 23(b)(3) superiority provision requires the court to determine "that the class action device is superior to other available methods for the fair and efficient adjudication" of the controversy. *In re Terazosin Hydrochloride*, 220 F.R.D. at 700. The four factors district courts consider in making this determination are (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and (4) the difficulties likely to be encountered in the management of the class action. Fed. R. Civ. P. 23(b)(3)(A)–(D).

Plaintiffs assert that a class action is superior because "common issues predominate over non-common issues," "[t]here is no indication that the hundreds of individual [c]lass patients and their plans are interested in individually controlling this antitrust matter," "there are no other individual purchaser actions challenging

[Defendant's alleged] violations," "it is desirable to concentrate the litigation in this federal forum," and "again because of significant, predominate common issues." (Dkt. 151 at 31 (emphasis omitted).)  Still, as discussed above, individual issues predominate and "the lack of predominance belies any suggestion that a fair administration of the class claims could save the resources of both the court and the parties."  *See Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1184 (11th Cir. 2010) (alterations adopted and quotation omitted); *see id.* ("[T]he predominance analysis has a tremendous impact on the superiority analysis for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." (quotation and ellipses omitted)).  Individualized issues in this case predominate as scrutinizing records to determine who has standing "would involve a lengthy and particularized inquiry—in essence, a series of mini-trials—for countless individual plaintiffs."  *See Villarino v. Pacesetter Pers. Serv., Inc.*, 161 F.4th 1270, 1281 (11th Cir. 2025).  Therefore, a class action is not a superior method for the fair and efficient adjudication of this controversy.

## CONCLUSION

Accordingly, Plaintiffs' motion to certify class (Dkt. 151) is **DENIED without prejudice**.

**ORDERED** in Orlando, Florida, on March 27, 2026.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record