**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| LAURA POWERS, CHRISTINA ROSEAN, Individually and on Behalf of Those Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>HEALTH FIRST, INC.,<br><br>Defendant. | No. 6:23-cv-00375-JSS-RMN |

**PLAINTIFFS' MOTION AND MEMORANDUM FOR**
**RECONSIDERATION OF CLASS CERTIFICATION**
**OPINION AND ORDER**

## TABLE OF CONTENTS

**PREDOMINANCE AND STANDING** ................................................... 3

**Dr. Gale's Admissible, Reliable Methodology Is Capable of Showing at Trial Predominately Common Classwide Antitrust Price Injury and Standing,** *Including the Standing of Absentee Class Members* ........................................................ 3

**The Gale Methodology Has the Capacity to Show Common Price Injury and the Standing of Absentee Class Members** ...................................................................... 4

**Applying *Daubert*, the Court Determines Dr. Gale's Methodology Is Reliable and Useful for the Jury's Understanding** .................................................................... 4

**Passing the *Daubert* Test, Gale's Methodology Is Sufficient to Establish Predominance for Absentee Class Members Unless No Reasonable Juror Would Believe It** ........................................... 5

The Reliable Gale Methods Identify Patients Who Paid
Full Co-Insurance Because They Did Not Reach
Their Out-of-Pocket Maximums ................................................................. 6

 ER Patients Should Have Inpatient Standing for All This Care
Is Sold from the Same Integrated and Monopolized Hospital Facilities............. 6

Both Cares Come from the Same Integrated and Monopolized
Hospital Facilities Where 74% of Inpatient Admissions
Come Through the ER ............................................................................. 7

Price Injury Inflicted on Both Sorts of Care Are Shown by
The Same Expert Benchmarking ................................................................. 8

The Court's Implicit, Non-Rigorous Merits Finding
of Two Relevant Markets Is Impermissible ................................................... 8

Under *Prado* Common Standing Should Be Accorded
Because Both Patients' Suffer the Same Antitrust
Price Injury Derived from the Same Claims ................................................... 9

TYPICALITY ...................................................................................... 10

Same Legal Theory................................................................................. 10

Same Claim Exclusionary Practices ........................................................... 11

Same Claim Injury ................................................................................ 11

ADEQUACY OF REPRESENTATION......................................................... 12

The Lack of an Antitrust Pass-On Defense Makes the Winners and
Patients Losers Assertion of *Ironworkers* Inapposite ..................................... 12

Plaintiffs respectfully move for reconsideration of certain findings in the Court's

extensive Opinion and Order denying class certification without prejudice (Dkt. 279)

before it sounds the potential death knell for this important litigation as to health care

monopolization impacting thousands of the most vulnerable in Brevard County.

Importantly, the Court cautions it has complete discretion not to consider this Motion if it merely presents rehashed argument. Dkt. 286. Plaintiffs believe it will find they are not merely engaging in such a wasteful, unproductive exercise. Only now do they have the Court's class analysis not previously available when fashioning their prior argument. Further, until now they have been unable to assess the impact of its *Daubert* findings on the cogency of its class findings. They ask they be allowed to focus on the Court's new findings to marshal record evidence and precedent addressing those findings. The Court may find this useful and possibly persuasive.

## PREDOMINANCE AND STANDING

### Dr. Gale's Admissible, Reliable Methodology Is Capable of Showing at Trial Predominately Common Classwide Antitrust Price Injury and Standing, *Including the Standing of Absentee Class Members*

This Court finds that individual issues would predominate at trial as to absentee class members' ability to show antitrust price injury and standing. Dkt. 279 at 17-18, 27-29.  Plaintiffs respectfully seek reconsideration of this finding for three reasons. *First*, Plaintiffs' expert Dr. John Gale presents a methodology with the capacity of showing at trial, with predominately common proof, classwide antitrust price injury and standing, including the standing of absentee class members.[1] *Second*, with careful and extensive analysis, the Court finds this methodology to be reliable and of use to the jury in understanding issues. It is thus admissible under *Daubert v. Merrell Dow*

---

[1] Proving standing requires Plaintiffs to establish that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016); Dkt. 279 at 7.

*Pharm. Inc.,* 509 U.S. 579 (1993). In support the Court relies in part upon multiple

Eleventh Circuit precedents. *Third*, as a consequence this expert predominance

showing can only be rejected by a finding no reasonable juror would believe it. Health

First does not meet this high bar. The Court has already found in its rigorous *Daubert*

analysis Gale's approach would assist the trier of fact to understand the evidence, or

to determine a fact in issue.

**The Gale Methodology Has the Capacity to Show
Common Price Injury and the Standing
of Absentee Class Members**

Dr. Gale's rigorous econometric methodology has the capacity to demonstrate,

with predominately common proof, classwide antitrust price injury and the standing

of absentee class members. Because his regressions find positive and statistically

significant results for the competition control variables, "then economists conclude

that the test [relevant] market has anticompetitive pricing. *The anticompetitive pricing*

*impacts all buyers in the market.*" Dkt. 152-4 (sealed) at 51; *see also id*. at 56.

**Applying *Daubert*, the Court Determines Dr. Gale's
Methodology Is Reliable and Useful for the
Jury's Understanding**

In its careful *Daubert* Opinion and Order the Court relies on the above Gale

opinions to demonstrate "class-wide antitrust violations and resulting antitrust price

injury." Dkt. 273 at 2. "Specifically, Gale uses regression modelling and a benchmark

methodology to demonstrate how Defendant's alleged "monopoly pricing on average

exceeds the benchmark competitive pricing of these competitive Florida hospitals" and

"to generate an estimate of a percentage, average measure of price overcharging for *all*

4

*[c]lass members' varying billings for the relevant care.*" *Id*. (emphasis supplied). His methodology is sufficiently reliable and assists the trier of fact to understand the evidence or to determine a fact in issue. *Id*. at 5-7. "Here, Gale's opinion is helpful *to determine whether "questions of . . . fact common to class members predominate over any questions affecting only individual members." Id*. at 5 (emphasis supplied).

In support the Court finds

[r]egression analyses are generally considered a reliable methodology. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 566 (11th Cir. 1998) ('[R]egression analysis[ is] a methodology that is well-established as reliable.'); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) (en banc) ('In antitrust cases, regression models have been widely accepted as a generally reliable econometric technique to control for the effects of the differences among class members and isolate the impact of the alleged antitrust violation antitrust violations on the prices paid by class members.').

*Id*. at 6-7. "Gale's methodology is reliable to that end." *Citing Green-Cooper v. Brinker Int'l Inc.*, 73 F.4th 883, 893 (11th Cir. 2023). *Id*. at 10.

### Passing the *Daubert* Test, Gale's Methodology Is Sufficient to Establish Predominance for Absentee Class Members Unless No Reasonable Juror Would Believe It

Under *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 459 (2016), the relative "persuasiveness [of the Gale methodology] is, in general, a matter for the jury." "Reasonable minds may differ as to . . . [the correctness of the expert's opinion]. Resolving that question, however, is the near exclusive province of the jury. The District Court could have denied class certification on this ground only if concluded that no reasonable juror could have believed [the expert's opinion]." *Id.*; *City of Philadelphia v. Banc of America Securities*, No. 24-297, 2025 WL 2180607 at *3 (2d Cir.,

5

filed Aug. 1, 2025); *Clarkson v. Alaska Airlines, Inc.*, 59 F.4th 424, 435 (9th Cir. 2023).

The Court has already found Gale assists the trier of fact to understand the evidence or to determine a fact in issue. Accordingly, Plaintiffs respectfully ask the Court to reconsider its predominance finding as to absentee standing.

### The Reliable Gale Methods Identify Patients Who Paid Full Co-Insurance Because They Did Not Reach Their Out-of-Pocket Maximums

In support of its predominance finding as to absentee class member standing the Court finds that Plaintiffs have not shown common proof capable of identifying patients who paid full co-insurance because they did not reach their annual out-of-pocket maximum. Dkt. 279 at 23.

Plaintiffs request this finding be reconsidered because it overlooks the Gale expert method of identifying such patients at trial.

> At trial, I will exclude patients without positive co-insurance payments, using the Health First billing and payment data. These two data will allow me to identify at trial patients paying their full co-insurance payments as required by the damage Class definition.

Dkt. 152-4 (sealed) at 59. Because his methods are reliable and helpful to the jury, this opinion should only be rejected by the Court if no reasonable juror would believe it.

### ER Patients Should Have Inpatient Standing for All This Care Is Sold from the Same Integrated and Monopolized Hospital Facilities

Plaintiffs also seek reconsideration of the finding ER patients' standing to challenge antitrust price injury does not extend to redress the injury of inpatients. Dkt. 279 at 4. Both sorts of patients (a) suffer in common antitrust price injury for care purchased from the *same integrated* and monopolized hospital facilities sold in *one*

*common* relevant product market, the alleged market for sale of inpatient and emergency room care; (b) will have their common monopoly overcharging demonstrated by the *same*, reliable Gale benchmarking across the *same* market; (c) do not purchase in effect in two separate ER and inpatient relevant markets as the Court implicitly and impermissibly finds *on the merits* to reject common standing; and (d) suffer a common injury caused by the *same alleged claims* of antitrust illegality.

### Both Cares Come from the Same Integrated and Monopolized Hospital Facilities Where 74% of Inpatient Admissions Come Through the ER

With much specific, factually supported, and plausible detail, the First Amended Complaint ("FAC") (Dkt. 56) alleges "[t]he acute care hospitals' inpatient care and emergency room care services constitute a single, well-defined relevant product market." *Id*. ¶ 23. It "encompasses the sale of inpatient and emergency room care by Health First and competing acute care hospitals." *Id*. ¶ 17.

In denying Health First's Motion to Dismiss the FAC the Court accepted as plausible the allegation that "acute care hospitals' sale of emergency room care *is closely integrated with its sale of inpatient care such that the bundle of inpatient and emergency room services constitutes a single product market."* Opinion and Order (Dkt 103) at 9 (emphasis supplied).

Further, "the University of Maryland Global Health Initiative states that within health systems, *emergency room care serves as an entry point to acute care hospitals or individuals with emergent and urgent conditions."* *Id.* (emphasis supplied). Defendant's

7

own data suggests *74% of the inpatients arrived through the emergency room department. Id.* (emphasis supplied).

And, "the Mayo Clinic states that an acute care *hospital's emergency room provides its full range of emergency care by relying upon **integrated** inpatient services." Id.* (emphasis supplied).

Extensive, fact-based, and reliable Gale expert market opinion supports the Court's one-market plausibility findings. Dkt. 152-4 (sealed) at 25-41.

### Price Injury Inflicted on Both Sorts of Care Are Shown by The Same Expert Benchmarking

Dr. Gale's rigorous econometric methodology is shown to have the capacity to demonstrate antitrust price injury for both ER and inpatient care in one relevant market. Dkt. 152-4 (sealed) at 27-30, 56, 58-60. ER patients seeking their and inpatient monopoly overcharging will use the same approach for overcharging of both cares. There is no reason why the ER patients, their experienced class counsel, and Gale cannot show classwide inpatient antitrust price injury as well.

### The Court's Implicit, Non-Rigorous Merits Finding of Two Relevant Markets Is Impermissible

By casting aside all the above rationales for common standing in one relevant product market, and without required rigorous analysis, the Court is implicitly finding on the merits ER and inpatients are injured in two separate relevant product markets requiring separate standing showings. Such a merits finding to defeat class certification is not only inconsistent with the Court's findings above of the plausibility of the FAC's one-market allegation, it transgresses the Supreme Court's admonition in *Amgen Inc.*

8

*v. Connecticut Retirement Plans*, 568 U.S. 455, 465-66 (2013), that "'an evaluation of the probable outcome on the merits is not properly part of the certification decision'"

### Under *Prado* Common Standing Should Be Accorded Because Both Patients' Suffer the Same Antitrust Price Injury Derived from the Same Claims

Here granting ER patients broader standing is sound because both sorts of patients "'possess the same interest and suffer the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011).

Under *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266 (2000), it is enough for common standing that ER patients' and inpatients' monopolization and other antitrust claims are the same. Their claims have "the same essential characteristics … in same relevant market." *Piazza v. Ebsco Industries, Inc.*, 273 F.3d 1341, 1351 (2001) *citing Prado–Steiman*, 221 F.3d at 1279 n. 14.

ER patients "assert claims of injury that are based on the same violations [as the inpatients] which target the same conduct and where 'injury suffered' is identical." *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1258 (2023) *citing Prado-Steiman*, 221 F.3d at 1279, 1281. This common price injury "ensures that the [ER patients] possess the requisite interest in litigating *all* the absent class members' claims." *Id. citing Prado-Steiman*, 221 F.3d at 1279. "To have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but ... also be part of the class and possess the same interest and suffer the same injury as the class members." *Mills v. Foremost Ins. Co.,* 511 F.3d 1300, 1307 (11th Cir. 2008) (quotation omitted).

9

## TYPICALITY

Plaintiffs also request reconsideration of typicality and adequacy of representation findings. Dkt. 279 at 26-33. Under the typicality precedent found by the Court to be controlling and the above analysis (*supra* at 6-8) there is typicality between the ER patients' claims and those of inpatients and plans asserted in one, well-defined relevant market. "The typicality requirement does not mandate that products purchased, methods of purchase, or even damages of the named plaintiffs must be the same as those of the absent class members." *In re Urethane Antitrust Litig.,* 251 F.R.D. 629,641 (D. Kan. 2008), *aff'd,* 768 F.3d 1245 (10th Cir. 2014); *see also In re TFT-LCD Antitrust Litig.,* 267 F.R.D. 291, 306 (N.D. Cal. 2010) ("There is ample support in the antitrust case law for certifying classes in which there are some variations between products, customers, marketing and distribution channels.").

**Same Legal Theory.** The ER patients' claims need not be identical to those of other class members and "there need only exist a sufficient nexus between the legal claims of the named class representatives and those of individual class members to warrant class certification." As here (*supra* at 6-8) "[t]his nexus exists 'if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *Ault v. Walt Disney World Co.,* 692 F.3d 1212, 1216 (11th Cir. 2012).

Because there is a sufficient nexus among the claims of all class members Dr. Gale has shown the same, reliable overcharge benchmarking's capacity to demonstrate common overcharging for all class members at trial. Dkt. 152-4 at 56, 58-60 (sealed).

These opinions support classwide typicality unless this Court finds no reasonable juror would believe them under *Tyson. Supra* at 5-6. It has made no such finding.

**Same Claim Exclusionary Practices.** The necessary nexus exists if, as here, the claims of the ER patients, inpatients and plans stem from same exclusionary practices. *See Ault,* 692 F.3d at 1216. Gale extensively opines how the same exclusionary, long-term Health First practices maintain its market power and allow and cause the imposition of classwide antitrust price injury. Dkt. 152-4 at 42-44 (sealed).

These opinions support classwide typicality unless this Court finds no reasonable juror would believe them under *Tyson. Supra* at 5-6. It has made no such finding.

**Same Claim Injury.** A finding of typicality is apposite because the ER patients possess the same interest and suffer the same antitrust price injury as other class members. *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1275 (11th Cir. 2009). The presence of substantial factual differences does not negate a finding that the typicality requirement has been met so long as "there is a strong similarity of legal theories." *Loc. 703, IB. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.,* 762 F.3d 1248, 1259 (11th Cir. 2014).

As in most monopolization cases, typicality is satisfied here because the ER patients and inpatient and plan claims arise out of Health First's near-universal application of exclusionary conduct causing higher prices market wide. *See* 6 Newberg & Rubenstein on Class Actions § 20:40 (6th ed. 2024); *DG ex rel. Stricklin v. Devaughn,*

594 F.3d 1188, 1195 (10th Cir. 2010). "Differing fact situations of class members do not defeat typicality so long as the claims of the class representatives and class members are based on the same legal or remedial theory." *Monocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018).

## ADEQUACY OF REPRESENTATION

### The Lack of an Antitrust Pass-On Defense Makes the Winners and Patients Losers Assertion of *Ironworkers* Inapposite

The Court finds a potential conflict preventing adequacy of representation between patients and plans by applying the "winner and loser" analysis of *Ironworkers Loe. Union 68 v. AstraZeneca Pharms., LP,* 634 F.3d 1352, 1364 (11th Cir. 2011). In essence this approach applies overcharge pass on analysis to speculate that plans here might profit by passing monopoly overcharging on to patients, the losers. Dkt 279 at 32. Therefore, it is found the plans' and patients' interests are potentially antagonistic.

Of course, *Ironworkers* is not an antitrust matter. Whatever merits its pass-on speculation has in other legal contexts, as a matter of law it is completely inapposite here. As a matter of bright-line antitrust law, Health First may not rely on a pass-on defense to show antagonistic interests. Such a defense is "contrary to the Supreme Court's decision in *Hanover Shoe* which does not allow as a matter of law a pass on defense." *In re K-Dur Antitrust Litig.,* 686 F.3d 197, 223 (3d Cir. 2012). The antitrust law attributes all plan overcharge injury to the plans. As a consequence, a distinct majority of courts have rejected use of a pass-on defense in the antitrust context. Newberg & Rubenstein on Class Actions § 3:64 (6th ed. 2024) (collecting cases).

Further, such pass-on speculation is unsupported in the record here and ignores the theory of the case supported by Dr. Gale's reliable, fact-based testimony. Health First's anticompetitive conduct forces *all class members* including plans to pay supra-competitive prices and injures all class members. Dkt. 152-4 at 56, 58-60 (sealed). *See also In re Nexium Antitrust Litig.*, 777 F.3d 9, 27 (1st Cir. 2015) ("antitrust injury occurs the moment the purchaser incurs an overcharge").

The Court should not disregard this rigorous opinion to substitute its own speculative economic analysis. *See Vogt v. State Farm Life Ins. Co.,* 963 F.3d 753, 767 (8th Cir. 2020) (conflict based on "uncertain predictions" cannot "serve as a basis to defeat class certification").

Further, Dr. Gale's opinion supports a lack of adequacy antagionism unless this Court finds, once again, no reasonable juror would believe it under *Tyson. Supra* at 5-6. It has made no such finding.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request reconsideration of class findings.

Dated: April 10, 2026                    Respectfully submitted,

                                         BY: /s/ *R. Stephen Berry*
                                         Trial Counsel
                                         R. Stephen Berry
                                         *(Admitted Pro Hac Vice)*
                                         **Berry Law PLLC**
                                         1100 Connecticut Avenue NW
                                         Suite 645
                                         Washington, DC 20036
                                         Telephone: (202) 296-1212

sberry@berrylawpllc.com

Tucker H. Byrd
Florida Bar No. 381632
**Byrd Campbell, P.A.**
180 Park Avenue North, Ste 2A
Winter Park, FL 32789
Telephone: (407) 392-2285
TByrd@ByrdCampbell.com

Ronald G. Meyer
**Meyer, Blohm and Powell, P.A.**
Post Office Box 1547
Tallahassee, FL  32302
rmeyer@meyerblohmlaw.com
Telephone: (850) 878-5212

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2026 I have caused the foregoing to be served via the ECF system on counsel for the Defendant.

*/s/ R. Stephen Berry*
R. Stephen Berry