UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LAURA POWERS and
CHRISTINA ROSEAN,

     Plaintiffs,

v.                                    Case No: 6:23-cv-375-JSS-RMN

HEALTH FIRST, INC.,

     Defendant.
_____/

**<u>ORDER</u>**

Plaintiffs move for reconsideration of the court's order denying class certification. (Dkt. 287.) Defendant opposes the motion. (Dkts. 296, 297.) Upon consideration, for the reasons outlined below, the court denies the motion.

Plaintiffs seek to represent a putative class action on behalf of themselves and those similarly situated against Defendant for alleged antitrust violations. (Dkt. 56.) Defendant is the parent corporation of four hospitals in Brevard County: Holmes Regional Medical Center, Cape Canaveral Hospital Inc., Palm Bay Hospital, and Viera Hospital, Inc. (*Id.* at 6.) Plaintiffs' proposed class includes "persons insured by health plans and . . . their health plans which purchase inpatient and emergency room hospital care from [Defendant's] acute care hospitals on behalf of the persons, or members of the persons' families covered by their health plans." (Dkt. 151 at 1–2 (quotation omitted).) After receiving thorough briefing from the parties and holding

an evidentiary hearing, the court issued an order denying class certification.  (Dkt. 279.)  Plaintiffs seek reconsideration of the order.  (Dkt. 287.)

"Courts possess inherent power to modify their interlocutory orders before entering a final judgment."  *Fla. Power & Light Co. v. United States*, 66 Fed. Cl. 93, 96 (2005).  However, "[t]hough district courts enjoy plenary *power* to reconsider non-final rulings, they need not employ plenary *review* when doing so.  Indeed, in most instances district courts should hesitate before revisiting their earlier interlocutory orders; important interests of finality, stability, and predictability underlie that justifiable caution."  *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1380 (11th Cir. 2024).    "A  district  court's  decision  to  reconsider  an  interlocutory  order is . . . committed to its sound judgment" and is thus "review[ed] for abuse of discretion."  *Id.* at 1381; *accord Entergy Nuclear Fitzpatrick, LLC v. United States*, 711 F.3d 1382, 1386 (Fed. Cir. 2013) ("review[ing] the trial court's decision on reconsideration for an abuse of discretion").

Courts generally regard the "reconsideration of a prior order" as "an extraordinary remedy" that "must of necessity be used sparingly."  *Taylor Woodrow Constr. Corp. v. Sarasota/Manatee Airport Auth.*, 814 F. Supp. 1072, 1072 (M.D. Fla. 1993).  "A motion for reconsideration must demonstrate why the court should reconsider its prior decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision."  *Fla. Coll. of Osteopathic Med., Inc. v. Dean Witter Reynolds, Inc.*, 12 F. Supp. 2d 1306, 1308 (M.D. Fla. 1998) (quotation omitted).  As a rule, a "motion for reconsideration cannot be used to 'relitigate old

matters[ or to] raise argument or present evidence that could have been raised prior to'" the court's decision. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) (quoting *Michael Linet, Inc. v. Village of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005)); *see Hornady*, 118 F.4th at 1381 ("[A] district court typically would not abuse its discretion when rejecting a motion to reconsider an interlocutory order if the movant simply rehashed arguments already considered and rejected."). "[C]ourts have recognized three . . . grounds justifying reconsideration: (1) an intervening change in controlling law[,] (2) the availability of new evidence[,] and (3) the need to correct clear error or manifest injustice." *Fla. Coll. of Osteopathic Med.*, 12 F. Supp. 2d at 1308.

Here, Plaintiffs do not supply any legal authority regarding reconsideration. (Dkt. 287.) That, alone, is a sufficient reason to deny the request. *See United States v. Markovich*, 95 F.4th 1367, 1379 (11th Cir. 2024) (explaining that parties forfeit a position when they "cite[] no legal authority to support it"); *Mills v. Foremost Ins. Co.*, No. 8:06-CV-00986-T-EAK, 2010 WL 4840050, at *2 (M.D. Fla. Nov. 23, 2010) (denying reconsideration of an order denying class certification where the plaintiffs "failed to include any authority or framework for which a motion for reconsideration should be granted" because "[i]t appear[ed that] the [plaintiffs] simply want[ed] another at-bat, something th[e] [c]ourt will not permit"). Plaintiffs also do not explain which, if any, of the recognized grounds justify reconsideration in this case. (*See* Dkt. 287.) Plaintiffs have not established an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice. (*See id.*) *See Adams v. Boeneman*, 335 F.R.D. 452, 454–55 (M.D. Fla. 2020) ("In

- 3 -

their . . . [m]otion for [r]econsideration, however, [the p]laintiffs merely disagree with the [c]ourt's analysis and re-hash previous arguments. This is not a basis for reconsideration."); *Brown v. Sec'y, Dep't of Corr.*, No. 2:03CV525FTM29DNF, 2005 WL 1702834, at *1 (M.D. Fla. July 18, 2005) (denying a motion for reconsideration where the "plaintiffs reargue[d] the merits of their amended motion for class certification" and did not "contend that their arguments [we]re based on new evidence," that reconsideration was "necessary to correct clear error or prevent manifest injustice," or that there had "been an intervening change in controlling law," and thus, concluding that the "plaintiffs ha[d] not shown that they [we]re entitled to the extraordinary remedy which they" sought).

Plaintiffs instead assert that "[o]nly now do they have the [c]ourt's class analysis not previously available when fashioning their prior argument." (*Id.* at 3.) However, the court's ruling on a party's motion is not one of the recognized reasons for reconsideration, and Plaintiffs cite no caselaw arguing that it is. (*See id.*) *See U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (noting that the court need not consider "perfunctory and underdeveloped" arguments and that such arguments are waived); *see also Am. Home Assur. Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985) (explaining that parties are not permitted "two bites at the apple"); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 694 (S.D. Fla. 2013) (noting that parties "may not present arguments, lose, and then say, 'wait, actually, here's another reason why class certification is []proper'"); *Ludwig v. Liberty Mut. Fire Ins. Co.*, 2005 WL 1053691, at *4 (M.D. Fla. Mar. 30, 2005) ("While the

[c]ourt realizes that, in most cases, one party will maintain that the court's decision was based on flawed reasoning, a motion for reconsideration is not the proper forum for the party to vent dissatisfaction with the [c]ourt's reasoning." (alterations adopted and quotation omitted)).

Further, as Defendant explains, (*see* Dkt. 296 at 3–4), the motion for reconsideration contains arguments that Plaintiffs either presented or could have presented earlier. (*See* Dkt. 287.) *See Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) ("It is an improper use of the motion to reconsider to ask the [c]ourt to rethink what the [c]ourt already thought through—rightly or wrongly." (alterations adopted, ellipses and quotation omitted)). For example, in their motion for reconsideration, Plaintiffs contend that their expert, Dr. John Gale, "has the capacity to demonstrate, with predominately common proof, class[-]wide antitrust price injury and the standing of absentee class members." (Dkt. 287 at 4.) In support of this argument, Plaintiffs cite only to Gale's expert report, which the court has already considered. (*See id.*; Dkt. 279; *see also* Dkt. 287 at 6 (stating that "Plaintiffs request this finding be reconsidered because it overlooks the Gale expert method of identifying such patients at trial" and quoting Gale's report).) *See Tillman v. Ally Fin. Inc.*, No. 2:16-CV-313-FTM-99CM, 2017 WL 8314651 (M.D. Fla. Nov. 20, 2017), at *1 ("A motion for reconsideration does not provide an opportunity to simply reargue—or argue for the first time—an issue the [c]ourt has already determined.").

Additionally, a district court does not abuse its discretion when it denies a motion for reconsideration based on "new arguments and theories" that the moving

party did not—but could have made—in the underlying motion. *See Fults v. GDCP Warden*, 764 F.3d 1311, 1318 (11th Cir. 2014) (alterations adopted and quotation omitted); *Mays v. U.S. Postal Serv.*, 122 F.3d 43, 46 (11th Cir. 1997) ("[A] motion to reconsider should not be used by the parties to set forth new theories of law"). For instance, Plaintiffs now argue that emergency room patients should have standing as to inpatient care. (Dkt. 287 at 6–9.)[1] Plaintiffs also add to their typicality arguments. (*Id.* at 10–12.) Finally, Plaintiffs raise new issues with Defendant's argument that the named Plaintiffs may have potentially antagonistic interests to certain members of the class. (*See* Dkt. 168 at 21; Dkt. 174 at 6; Dkt. 287 at 12–13.) However, as already explained, "[m]otions for reconsideration should not be used to raise legal arguments which could and should have been made before the judgment was issued." *See Cruz v. Aladro*, 129 F. App'x 549, 551 (11th Cir. 2005) (quotation omitted); *Manno*, 289 F.R.D. at 694 ("The reconsideration device is not designed to permit losing parties to prop up

---

[1] In this section, Plaintiffs attribute the quote, "assert claims of injury that are based on the same violations [as the inpatients] which target the same conduct and where 'injury suffered' is identical" to *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1258 (11th Cir. 2023). (Dkt. 287 at 9.) The actual quote is "[a]fter all, claims of injury that are based on the same misrepresentations target the same conduct . . . and the 'injury suffered' will be identical." *Williams*, 65 F.4th at 1260. Notably, Plaintiffs alter the portion of the quote—without brackets or ellipses to denote such a change—which explains that, in *Williams*, the key was that the named plaintiffs may have had standing to raise certain claims of misrepresentation if that exact same misrepresentation was identical for all of the products, but not if the alleged misrepresentations only applied to one of the products. *See id.* (explaining that "[t]he [n]amed [p]laintiffs may not have standing to raise" certain "claims because they may not have suffered the same injury" and directing the district court "to ensure that at least one [n]amed [p]laintiff has standing to assert each claim or subclaim"). "It is inappropriate to purposefully misquote" a court decision. *Askan v. FARO Techs. Inc.*, No. 6:21-CV-1366-PGB-DCI, 2022 WL 2306721, at *2 n.6 (M.D. Fla. May 18, 2022). "[M]isquoting cases" is potentially sanctionable conduct; in the future, Plaintiffs should ensure that any cases cited are accurately quoted. *See Williamson v. TransUnion LLC*, No. 3:24-CV-43-WWB-PDB, 2025 WL 2443063, at *2 (M.D. Fla. Aug. 5, 2025) (sanctioning a plaintiff because the plaintiff repeatedly cited non-existent cases and rules, misquoted cases, and misrepresented rules and holdings).

arguments previously made or to inject new ones, nor to relieve a party of the consequences of its original, limited presentation." (quotation omitted)).

One last argument merits further discussion.  Plaintiffs assert that under *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016), because the court found that Plaintiffs' expert survived a *Daubert*[2] challenge, the court cannot conclude that Plaintiffs failed to establish predominance, as that issue is a matter for the jury.[3]  (Dkt. 287 at 5–6.)  In *Tyson*, class members—employees at a processing plant—were required to wear certain protective gear and were suing to receive compensation for the time spent donning and doffing that gear.  577 U.S. at 447.  There was no question that each employee was "required to put on and take off the[] protective gear" and thus had standing.  *Id.*  There was, however, a question of whether "the amount of time spent donning and doffing, when added to [the employee's] regular hours, amounted to more than [forty] hours in a given week."  *Id.* at 454.  To answer that question, the plaintiffs relied on an expert who "estimate[d] the amount of uncompensated work each employee did" because of the donning and doffing activities.  *Id.* at 450.  Although the petitioner argued that "person-specific inquiries into individual work time predominate[d] over the common questions raised by [the] respondents' claims," the Court concluded that because "each class member could have relied on that sample

---

[2] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).
[3] The court notes that it considered *Tyson* in the order denying class certification.  (*See* Dkt. 279 at 36 (quoting *Tyson*).)  *See United States v. Zarabozo*, No. 07CR20839-PCH, 2008 WL 5062463, at *1 (S.D. Fla. Nov. 26, 2008) ("It should be clear to all that the [c]ourt was aware of that proposition and fully considered it when the [c]ourt ruled.").

to establish liability if he or she had brought an individual action," the sample was a

permissible means of establishing liability. *Id.* at 454–55.

The court identifies four flaws with Plaintiffs' argument. First, standing is for

the court—not the jury—to decide. Second, *Tyson* does not hold that predominance

is established once evidence is found admissible under *Daubert*. Third, the court did

not find Plaintiffs' expert admissible for the purpose of establishing standing, nor did

Plaintiffs argue that his report should be admissible to that end. Finally, the fact that

Plaintiff Laura Powers lacks standing is emblematic of the inapplicability of *Tyson* to

this case. The court elaborates on each of these in turn.

First, Plaintiffs' "argument fails to recognize that standing is a question of

subject matter jurisdiction, not a question for the trier of fact." *Bouton v. Ocean Props.,

Ltd.*, No. 16-CV-80502, 2017 WL 4792488, at \*15 (S.D. Fla. Oct. 23, 2017); *see Cordoba

v. DIRECTV, LLC*, 942 F.3d 1259, 1274 (11th Cir. 2019) ("[A]t some time in the course

of the litigation[,] *the district court* will have to determine whether each of the absent

class members has standing before they [can] be granted any relief." (emphasis

added)). *Tyson* did not deal with an issue of standing. *See* 577 U.S. at 454–59. Rather,

the issue in *Tyson* was whether a representative "sample relied upon [by the plaintiffs

wa]s a permissible method of proving class[-]wide liability." *Id.* at 455. In fact, after

*Tyson*, the Eleventh Circuit continued to maintain that standing inquiries are

"individualized issue[s]" that district courts must "account for . . . in deciding whether

issues common to the class actually predominated over issues that were individualized

to each class member." *Cordoba*, 942 F.3d at 1274.

Second, Plaintiffs seem to argue that *Tyson* prevents the court from concluding that a plaintiff fails to establish predominance once the court determines that evidence pertaining to predominance is admissible under *Daubert*.   (Dkt. 287 at 6–6.) "*Tyson* . . . does not speak to such an expansive theory as a means to manufacture predominance." *In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*, No. 14-CV-5696, 2017 WL 1196990 (N.D. Ill. Mar. 31, 2017); *see Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774, 785–86 (9th Cir. 2021) (explaining that, even after *Tyson*, establishing predominance "goes beyond determining whether the evidence would be admissible in an individual action" (quotation omitted)), *on reh'g en banc*, 31 F.4th 651 (9th Cir. 2022); *Castillo v. Bank of Am., NA*, 980 F.3d 723, 733 (9th Cir. 2020) (distinguishing *Tyson* because the plaintiff "provided no common method of proof, or representative evidence of proving class[-]wide liability on which each employee could have relied"); *In re Asacol Antitrust Litig.*, 907 F.3d 42 (1st Cir. 2018) ("[U]sing the average time it takes a person to don and doff clothes to estimate how long it takes a given individual to do so . . . is quite different than saying, for example, that a given person wore certain clothes merely because most but not all others did so."); *see also Tyson*, 577 U.S. at 460 ("Whether a representative sample may be used to establish class[-]wide liability will depend on the purpose for which the sample is being introduced and on the underlying cause of action.").

Third, here, the court determined that Plaintiffs' expert was admissible for a

limited purpose—one which did not include establishing standing. (*See* Dkt. 273.)  The

court concluded that Plaintiffs' expert was admissible under *Daubert* because he could

potentially show an average overcharge for services, "demonstrat[ing] that a reliable

class-wide damages methodology exists," and his expert opinion was thus "reliable to

that end."  (Dkt. 273 at 10 (alterations adopted and quotation omitted).)  The court

based this finding on Gale's qualifications "in antitrust, competition analysis, and

damages estimations." (*Id.* at 4.)  However, the court did not conclude—and Plaintiffs

did not claim—that Gale is qualified, that his opinions are helpful, or his methodology

was reliably able to interpret internal hospital data and determine for standing

purposes whether a patient has been billed for a service.  (*See* Dkt. 175 at 4 ("The

economic and econometric opinions of Dr. Gale focus on relevant issues helpful to the

jury's deliberations: (a) demonstrating an econometric benchmark regression

methodology capable of showing at trial class[-]wide, predominately-common

antitrust price injury[,] (b) extensive fact and economic analysis supporting the [f]irst

[a]mended [c]omplaint's . . . definition of the relevant market[, and] (c) explication of

the economics of monopolization, exclusion of competition, and how [Defendant's]

market power leads to above-competitive pricing materially inflicting antitrust price

injury on Plaintiffs and other patients, as well as their insurers."); *see also* Dkt. 273.)

Finally, for *Tyson* to apply, the expert analysis at issue must be "a permissible

method of proving class[-]wide liability . . . by showing that each class member could

have relied on that sample to establish liability if he or she had brought an individual

action." 577 U.S. at 455.  Here, the court found that Plaintiff Powers lacked standing

as to inpatient care and Plaintiffs do not present the court with a basis to reconsider that finding. (*See* Dkt. 279 at 6–18; Dkt. 287.) In conducting the predominance analysis, the court noted that "some of the proposed class members, like Powers, suffered no injury and thus lack standing" and Plaintiffs' expert could not establish class-wide standing "as demonstrated by the analysis as to Powers's injury." (Dkt. 279 at 37–38.) Thus, Plaintiff Powers's situation exemplifies the inapplicability of *Tyson* to this case. (*See id.*) *See Tyson*, 577 U.S. at 458 ("The underlying question . . . [i]s whether the sample at issue could have been used to establish liability in an individual action.").

Accordingly, Plaintiffs' motion (Dkt. 287) is **DENIED**.

**ORDERED** in Orlando, Florida, on May 15, 2026.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record

- 11 -